JAMES B. THAYER & another, trustees, *vs.* HELEN RIVERS, executrix, & others.

Suffolk.    April 2, 1901. — June 17, 1901.

Present: HOLMES, C. J., KNOWLTON, LATHROP, BARKER, & HAMMOND, JJ.

*Devise*, Execution of power of appointment.

It is a familiar rule of law, that a donee of a power of appointment, who is given authority to choose and appoint an object of the power according to his judgment and discretion, cannot delegate the exercise of that discretion to another. But one having an estate with a power of appointment, under which he may give an absolute interest, or may put limitations on the use and enjoyment of that which otherwise would be such an interest, properly may exercise the power by giving one substantially the whole interest in the property and the whole control of it, in the form of a right of personal use and enjoyment during his life, with a right to appoint who shall have it after his death.

A will giving to the testator's children life estates with power of testamentary appointment contained this provision: "It is my will that my daughters and 'son shall have power of disposing of their respective shares of my estate among my lineal heirs, to have and enjoy the same upon such terms and provisions as may be prescribed by my children." A daughter of the testator, in attempted execution of this power, gave life estates to such of two nieces and a nephew as should survive her, and after their respective deaths the trustee was directed to convey the proportion or share of the trust fund which had been enjoyed for life by the decedent to such person or persons except the husband of one of the nieces as the decedent might by will appoint; and, in default of such appointment, to convey the share to the issue of the decedent. The nephew survived his aunt and died leaving a widow and two children, and by his will appointed his share of the property to his wife for life and after her death to his children in equal shares. *Held*, that the appointment by the daughter of life estates to her two nieces and her nephew was good, but that the attempted gift to her nieces

and nephew of the power to appoint anybody except the husband of one niece was void, because, whether or not it was void for other reasons, it purported to authorize an appointment to others than the lineal heirs of the original testator and thus exceeded the terms of the power under which she attempted to act. Therefore the attempted appointment in the will of the nephew under the invalid authority was as if it had never been made, and his share of the property went to his children under the appointment in his aunt's will providing that in default of appointment by him it should go to his issue.

BILL FOR INSTRUCTIONS brought by the trustees under the will of Rosalie G. Russell, as to their duties under the ninth clause of that will which purported to be in execution of a power of appointment given to Rosalie G. Russell by the will of her mother, Lydia Smith Russell, filed October 10, 1900.

The facts as set forth in the bill and admitted by the answers were as follows:

Lydia Smith Russell, widow, late of Milton, died December 19, 1859, leaving a will and four codicils which were proved in the Probate Court for the county of Norfolk March 31, 1860.

The testatrix left surviving her three children, two daughters, Geraldine I. Rivers, afterward Geraldine I. Upton, and Rosalie G. Russell, and a son, Jonathan Russell, who was more than twenty-one years of age at the time of his mother's death. These were the only children living at the death of the testatrix and there was no issue of any deceased child. In consequence thereof, by the terms of the will, two thirds of the residue of the estate of the testatrix was held in trust to pay the net income thereof to the two surviving daughters during their respective lives.

Lydia Smith Russell in her will made provisions concerning these shares, the income of which was payable to her daughters, as follows:

"Fourth. In case either of my daughters or my son shall die leaving issue, then it is my will that such issue shall have and be entitled to such share or shares of my real and personal property, and of the rents and income thereof, as his, her, or their deceased parent or parents would have had and been entitled to under my will if living.

"Fifth. In case either of my daughters shall die having survived me and without issue, then her share of my real and personal property, and of the rents and income thereof, shall be

held subject to such conditions, restrictions, and limitations as such daughter at any time during her life by any deed or deeds, sealed and delivered, in the presence of two witnesses, or by her last will and testament in writing, or any writing in the nature of and purporting to be her last will and testament, to be signed and published in the presence of and attested by three or more credible witnesses (whether she shall be married or not and notwithstanding any coverture), may direct or appoint; and in default of such direction or appointment, then such share as aforesaid shall be equally divided among my surviving children — and the issue of any deceased child shall take its parent's share by right of representation, and the property thus to be divided shall be held upon the same terms and provisions as are herein made as to the original portions. . . .

"Seventh. It is my will that the trusts herein created shall continue during the lives of my daughters and the survivors and survivor of them, and at the death of my last surviving daughter, all the property then held in trust shall be divided among those who shall be thereto entitled, as an absolute estate of inheritance, and they shall become seised and possessed thereof to their own use and behoof forever. And the persons to be entitled thereto are the children of my daughters, to take by right of representation, and if either of my daughters dies without issue and without making any direction or appointment as to her share as aforesaid — then the same shall be divided between the children of my other daughters or daughter, to take by right of representation, and my son if living, or his children, by right of representation."

By the first codicil to her will the testatrix revoked the gift made by her will to her son of an absolute estate in fee simple in his share of the residue of her estate, and gave to him a life estate therein with a power of disposal by will as set forth in the first codicil.

By the third codicil to her said will, the testatrix made provisions touching the share given to her son and the shares held for the benefit of her daughters, as follows:

" Whereas in the fifth article of my will I provided for an appointment to be made by my daughters to take effect in case of their death without issue, and in the first codicil I authorized

my son to make an appointment, I hereby limit and qualify said powers of appointment in the following manner : It is my will that neither of my daughters nor my son shall have any power of disposing of their respective shares of the estate, real or personal, received from me so as to enable my daughters respectively to limit and appoint in favor of their husbands or my son in favor of his wife more than the income for their lives respectively of my children's shares respectively of my estate, real or personal.

"It is my will that my daughters and son shall have power of disposing of their respective shares of my estate among my lineal heirs, to have and enjoy the same upon such terms and provisions as may be prescribed by my children. The foregoing provisions are made for appointments to take effect in case of the death of any of my children without issue then living.

"It is my will and I do hereby provide that either of my daughters may, notwithstanding she has children, at any time by any deed or writing, executed in the manner prescribed in the fifth article of my will, limit and appoint that her husband may receive for his own use and benefit during his natural life one-third of the income of his wife's share of my estate, both real and personal, and it is further my will that either of my daughters may limit and appoint in the manner aforesaid in what manner and under what conditions and limitations the issue of her children may at their death take and receive their share of my estate coming to my daughters under my will, and made subject to their appointment respectively. And it is further my will that my daughters may limit and appoint in manner aforesaid in what manner and under what conditions and limitations their respective shares of my estate, real and personal, and to whom shall pass in case at the death of my surviving child there shall not be then living any of my lineal descendants."

Jonathan Russell died September 26, 1875, without leaving issue within the meaning of his mother's will ; and Geraldine I. Upton, formerly Rivers, died March 29, 1885, leaving three children surviving her, namely, a son, George R. R. Rivers, and two daughters, Mary Rivers and Rosalie Genevieve Sheffield, formerly Rosalie Genevieve Shields, and no issue of any deceased

child.   The three children were all born in the lifetime of their grandmother, Lydia Smith Russell.

Rosalie Genevieve Russell, the last surviving child of Lydia Smith Russell, died without issue and unmarried on February 2, 1897, leaving a will which was proved in the Probate Court for the county of Norfolk March 3, 1897.   Her will contained the following provisions:

"Ninth.   All the property and estate to which under the will and codicils of my mother, the late Lydia Smith Russell, recorded with the records of Probate of this County of Norfolk, I am or may become entitled in possession, reversion, or remainder, or over which under said will and codicils I have any power of appointment, except the articles, if any, hereinbefore specifically given, and except any yearly income or profits of the same received by me or due me at the time of my death, I devise, bequeath, limit, and appoint to my Trustee hereinafter named, to hold the same to her, her heirs, executors, administrators and assigns, but in trust nevertheless to take and receive the said property and all rents, profits, interest, and income thereof, and to pay the net income and profits of said property in quarter-yearly payments in equal shares to and for the respective lives of such of the three children of my sister Geraldine, namely, of my two nieces Mary Rivers and Rosalie Genevieve Sheffield and my nephew George R. R. Rivers, as survive me, and from and after the respective deaths of the said surviving children, I direct the then trustee of this fund to hold or convey such proportion or share of said fund as may have been enjoyed by the decedent for life to such uses and for or to such person or persons, not including George C. Sheffield, husband of my said niece Rosalie Genevieve Sheffield, as the decedent may, by last will and testament, and notwithstanding any coverture, direct and appoint; and in default of such appointment shall convey the said share or proportion to the issue of the decedent in fee and absolutely in equal shares by representation, and if either of the said surviving nieces or nephew die without appointing and without leaving issue him or her surviving, then the share of such niece or nephew shall *go to the surviving* sisters and brother of the decedent, and to the issue of a brother or sister deceased upon the same terms and with the same provisions

as the original shares as expressed in this clause of my will. If either of my said nieces or my said nephew die before me, but leave issue who survive me, then I direct the trustee to set aside and take from the said fund such portion thereof and in such form as may in my trustee's best judgment be an equivalent for the portion or share which would have gone to the parent during life, and to convey and transfer said share so set aside to the issue of such parent by representation, in fee and absolutely.

"Tenth. All the property given to me by my late uncle Henry B. Smith, and all my other property and estate of whatever nature and wherever situate, and all property over which I now or hereafter may have any power of appointment, or otherwise, or which may not have been hereinbefore fully and sufficiently appointed or limited, I give, devise, bequeath, limit, and appoint to my said trustee hereinafter named, to her, her heirs, executors, administrators and assigns, but in trust to hold the same, to collect the rents, profits, and income thereof and to pay the net income in equal shares to and during the respective lives of my niece Mary Rivers and my nephew George R. R. Rivers; and from and after their respective deaths I direct the then trustee to hold or convey the one-half part or the whole of this fund (as the case may be) for or to such person or persons and in such manner and estate as the said Mary or the said George may by last will and testament appoint; and in default of appointment to convey the same to the issue of the decedent in fee and absolutely in equal shares by representation; and if either die without any appointment and without leaving issue him or her surviving, then his or her share shall be conveyed to the other, the said Mary or the said George or their respective issue by representation, on the same terms as the original shares in this clause of my will contained. In case either the said Mary or the said George die before me, leaving issue who survive me, then I devise and bequeath to such issue, absolutely and in fee and in equal shares, that portion of my said estate in which the parent of such issue if surviving me would have had a life estate under the above provisions in this clause of my will."

At the death of Rosalie G. Russell, the lineal descendants then living of Lydia Smith Russell consisted of Mary Rivers, George R. R. Rivers, and Rosalie G. Sheffield, grandchildren, all living

at the time of their grandmother's death ; ten great-grandchildren, namely, eight children of Rosalie G. Sheffield and two children of George R. R. Rivers, namely, the defendants Robert W. Rivers and Henry F. Rivers. None of the great-grandchildren was living at the death of Lydia Smith Russell.

After the death of Rosalie G. Russell, the trustees under the will of Lydia Smith Russell, being in doubt as to their duties under that will, filed a bill for instructions in this court, making parties thereto, among others, the lineal descendants of Lydia Smith Russell and the trustee under the will of Rosalie G. Russell. After hearing and argument before *Allen*, J., a final decree was made by him on January 13, 1898, by which it was adjudged, among other matters, that the ninth, eleventh and thirteenth articles of the will of Rosalie G. Russell operated as an effectual appointment of the share of the trust estate held under the will of Lydia Smith Russell, the income of which was payable to Rosalie G. Russell, upon the trust declared in those articles during the respective lives of the three children of Geraldine I. Upton ; but that the validity and effect of the remaining provisions of the articles, and of the rest of the will of Rosalie G. Russell relating to the disposition to be made of that share on the deaths of those children, were not determined. The trustees under the will of Lydia Smith Russell were ordered to pay over and transfer those portions of the trust estate to Mary Rivers, the then trustee under the will of Rosalie G. Russell, in trust for the purposes set forth in the articles named during the respective lives of Mary Rivers, George R. R. Rivers and Rosalie G. Sheffield, and thereafter for such persons as might be found legally entitled thereto. In accordance with this decree large amounts of real and personal property were transferred and conveyed to Mary Rivers in trust as aforesaid.

George R. R. Rivers died on February 11, 1900, leaving a widow, the defendant Helen Rivers, who was living at the death of Lydia Smith Russell, and for issue two children, the defendants Robert W. Rivers and Henry F. Rivers, both minors, and leaving a will which was proved in the Probate Court for the county of Norfolk March 7, 1900. On the same day Helen Rivers and John M. B. Churchill were appointed executors of that will, and on June 27, 1900, they were also appointed trus-

tees thereunder. On the same day Helen Rivers was also appointed guardian of Robert W. and Henry F. Rivers. Churchill died July 29, 1900, leaving Helen Rivers sole surviving executrix of and trustee under the will.

George R. R. Rivers, by the seventh and eighth articles of his will, made the following provisions:

"Seventh. From all my property and estate to which under either the will of my grandmother Lydia Smith Russell or the will of my aunt Rosalie G. Russell or the will of my mother Geraldine I. Upton or to which I am otherwise in any way entitled or may otherwise become entitled in possession, reversion or remainder or over which under said wills, or either of them, I have any power of appointment, I give devise limit and appoint to my wife Helen Rivers and to said John M. B. Churchill, seventy-five thousand dollars In Trust, to hold, manage and safely invest, and to pay the net income thereof to my said wife Helen, for and during her life and from and after her death to pay the income thereof to my children in equal shares; the issue of any deceased child to take by right of representation; and, upon the death of the survivor of my said children, said trust to cease.

"Eighth. All the rest residue and remainder of my property of whatever name and nature and wherever situated, including the rest residue and remainder of all property and estate over which I have any power of appointment or disposal or to which I am or may become entitled in possession, reversion or remainder under the said wills of Lydia Smith Russell, Rosalie G. Russell and Geraldine I. Upton, all deceased, I give devise, bequeath, limit and appoint to my children in equal shares in fee simple forever; the issue of any deceased child to take by right of representation."

The plaintiffs were appointed trustees under the ninth, eleventh and thirteenth articles of the will of Rosalie G. Russell on March 15, 1899, in the place of Mary Rivers, who had resigned the trust, and on the same day were also appointed, in the place of Mary Rivers, trustees under the tenth article of the same will. As trustees under the ninth, eleventh and thirteenth articles they hold, as principal of the trust, personal property exceeding $100,000 in value, and real estate in Milton of the

estimated value of $45,000, all of which represents property transferred under the provisions of the decree above referred to or proceeds of property so transferred. George R. R. Rivers during his lifetime received from time to time one third of the net income arising from the fund. Upon his death one third of the principal became payable to the persons entitled thereto, and this one third was necessary to establish the trust fund of $75,000 created by the seventh article of his will.

The plaintiffs prayed for instructions as to the operation of the foregoing provisions in the wills of Rosalie G. Russell and George R. R. Rivers.

The case came on to be heard before *Knowlton*, J., who reserved it for the consideration of the full court upon the bill and answers and the agreed fact that George C. Sheffield mentioned in the ninth article of the will of Rosalie G. Russell survived George R. R. Rivers.

*R. G. Dodge & J. H. Harwood*, for Helen Rivers.

*R. D. Ware*, guardian *ad litem*, for Robert W. and Henry F. Rivers, children of George R. R. Rivers.

*G. M. Cushing*, guardian *ad litem*, for the possible issue of the sons of George R. R. Rivers..

*G. A. O. Ernst*, for Rosalie G. Sheffield, *F. D. Allen*, for Mary Rivers, and *H. Hutchinson*, for the trustees as defendants, submitted the case to the judgment of the court without filing briefs.

*H. K. Brown*, for the trustees as plaintiffs, filed no brief.

KNOWLTON, J. The first question that arises in this case relates to the effect of that part of the ninth clause of the will of Rosalie G. Russell, which, after appointing the income for life of the property to which she was entitled under the will of her mother to the three children of her sister Geraldine, in equal shares, purports to give the remainder after the death of each of them, " to such uses and for or to such person or persons, not including George C. Sheffield, . . . as the decedent may by last will and testament, and notwithstanding any coverture, direct and appoint."

It is a familiar rule of law that a donee of a power of appointment who is given authority to choose and appoint an object of the power, according to his judgment and discretion, cannot

delegate the exercise of that discretion to another. An attempt to delegate a power of appointment considered merely as an attempted delegation is of no effect. *Ingram* v. *Ingram*, 2 Atk. 88. *White* v. *Wilson*, 1 Drew. 298. *Webb* v. *Sadler*, L. R. 8 Ch. 419. *Carr* v. *Atkinson*, L. R. 14 Eq. 397. *Williamson* v. *Farwell*, 35 Ch. D. 128. *Burnaby* v. *Baillie*, 42 Ch. D. 282. *Topham* v. *Duke of Portland*, 32 L. J. Ch. 257.

On the other hand it has been held that one having an estate with a power of appointment under which he may give an absolute interest, or may put limitations on the use and enjoyment of that which otherwise would be such an interest, properly may exercise the power by giving one substantially the whole interest in the property and the whole control of it, in the form of a right of personal use and enjoyment during his life, with a right, by deed or will, to appoint persons who shall have it after his death. It has been held in some of these cases that it makes no difference whether the right of disposition in the object of the power to whom the property is appointed by the donee of the power, is by a deed or will, or by will alone. *Morse* v. *Martin*, 34 Beav. 500. *Slark* v. *Dakyns*, L. R. 10 Ch. 35.

The creation of such a right is a kind of delegation of the power, but in its nature it is rather a statement of a mode of enjoyment, use, and disposition of that which is virtually an absolute interest. Such an execution of a power by a donee presupposes that the delegated power, if exercised, will give no larger interest than might have been given by the original donee, and will not exceed the limits of the original power.

It is plain that the appointment in the will of Rosalie G. Russell is good, so far as it gives her two nieces and her nephew life estates, respectively. That which remains of her appointment, when taken in connection with that which immediately precedes it, we think must be deemed a continuation of the exercise of the power of disposition of the share of her mother's estate which was given to her under her mother's will, and an attempt to delegate the selection of the beneficiaries. The power to her nephew and nieces to appoint to anybody except George C. Sheffield is void, because it purports to authorize an appointment to others than the objects of the power mentioned in the will

under which she was acting. She could dispose of the estate only among the lineal heirs of her mother Lydia Smith Russell, and she undertook to authorize her nephew and nieces to appoint to others than those heirs.

Whether it was void for other reasons, it is unnecessary to consider.

The attempt to create a power of appointment in her nephew and nieces being of no effect, the next question is, whether, notwithstanding the form of appointment which appears in the will of George R. R. Rivers, these words in Rosalie G. Russell's will are operative, namely: " and in default of such appointment shall convey the said share or proportion to the issue of the decedent in fee and absolutely in equal shares by representation," etc. We are of opinion that they are. The appointment by Rivers under the invalid authority was as if there had been no appointment by him. She intended this disposition of the property to take effect if there should be no effectual appointment by her nephew and nieces. These words give the estate to the defendants, Robert W. Rivers and Henry F. Rivers, unless there is some good ground of objection to giving them effect.

It is truly said in argument that this is a gift to a class, and that the class is to be determined as of the time of the death of Rosalie G. Russell, when her will takes effect. Whether we do or do not assume that the class would open to let in after-born children of George R. R. Rivers is not very material, for no children were born to him after the death of Rosalie G. Russell. If others had been born, even as to them the appointment would not have been too remote under the rule against perpetuities, for their father, George R. R. Rivers, the life tenant under the appointment, was living at the time of the death of Lydia Smith Russell, and the estate would vest in possession in the last of his children at the expiration of a life in being when the will of the original testatrix took effect.

That he was not named in the original will is immaterial, for he is definitely referred to as life tenant in the appointment in the will of Rosalie G. Russell, which is to be taken in connection with the will of Lydia Smith Russell, and for this purpose read as if it were written into the former will.

The appointment to the defendants, Robert W. Rivers and Henry F. Rivers under the will of Rosalie G. Russell, in default of a valid appointment by their father, is good; and the trust estate held for the benefit of George R. R. Rivers during his life, is to be paid over to them in equal shares.

*Decree accordingly.*