EDMUND BAILEY FRYE & others, executors, *vs.* CALEB
LORING, executor, & others
(and a companion case between the same parties).

Essex.    April 7, 1953. — July 6, 1953.

Present: QUA, C.J., LUMMUS, WILKINS, WILLIAMS, & COUNIHAN, JJ.

*Power.    Devise and Legacy,* Power, Residuary clause.

Where an exclusive special power to appoint property by will to the donee's "wife and issue" was subject, as to some of the property, to the limitation that he could give his wife no more than a life interest, but was not subject to such limitation as to the rest of the property, and the donee left a will containing a preamble declaring that it was his "will of all property" owned by him "or over which . . . [he had] any power of testamentary disposition," a second paragraph providing a nominal legacy to his son, who was his only issue, a third paragraph specifically exercising the power by appointing to his wife the income for her life of "all of the property" subject to the power, and a fourth paragraph giving his wife the residue "outright and in fee simple," it was held, as to the portion of the property respecting which such limitation on the power was not applicable, that the donee had appointed to his wife not only the life interest appointed by the third paragraph of his will but also the remainder interest by the residuary clause, even though he was not aware of the existence of that portion of the property.    [394–396]

A special power given by a testatrix in her will to a nephew, not married at the time her will was made or at her death, to appoint property to his "wife and issue" by his will was exclusive.    [396–397]

TWO PETITIONS, filed in the Probate Court for the county of Essex on June 8, 1950, and March 13, 1952.

The cases were heard by *Phelan,* J.

*Thomas L. Gannon, (Frederick T. Doyle* with him,) for the petitioners.

*Robert G. Dodge, (Theodore Chase & Roy M. Robinson* with him,) for the respondents.

WILKINS, J.   The executors of the will of Cabot J. Morse, Junior, late of New Hampshire, appointed by the Probate Court, Suffolk County, appeal from two decrees of the Probate Court, Essex County, each dismissing a petition brought by them.   The more important petition is in the estate of Marian Hovey, late of Gloucester, and seeks to enforce alleged rights in a trust under her will and to set aside transfers of property by Cabot J. Morse, Senior, late of Boston, to his wife, Anna Braden Morse.   It is to this petition we refer except where otherwise stated.   The other petition, in the estate of George O. Hovey, late of Gloucester, is brought "for the purpose of enabling the petitioners to proceed with" the first petition, and seeks the revocation of two decrees, one in 1922, and one in 1930, allowing accounts of the trustee under his will.   The respondents in each case are Caleb Loring, surviving executor of the will of Cabot J. Morse, Senior;   Augustus P. Loring, surviving trustee under the wills of Marian Hovey and of Henry S. Hovey, and "trustee, agent or attorney for Anna Braden Morse";   and Anna Braden Morse.   There were no express findings and no detailed rulings, each decree merely reciting that it appeared that the prayers of the petition should not be granted.

The petition alleges that Cabot J. Morse, Junior, "was and his estate now is the remainderman of a trust under the seventh paragraph of the will of Marian Hovey";   and that the respondent Augustus P. Loring, as surviving trustee under her will, has a claim against the estate of Cabot J. Morse, Senior (hereinafter called Cabot), which he refuses, and is unable, to enforce because he is "trustee, agent or attorney" for the respondent Anna Braden Morse, and has in his custody and control all the "direct proceeds" of certain property conveyed to the respondent Morse by Cabot "in fraud of his creditors."   The petition seeks to set aside transfers of that property to the end that there may be sufficient assets in Cabot's estate to enable the trust under the will of Marian Hovey to recover the amount of its claim.

George O. Hovey died in 1877, and his will was admitted

to probate in that year. He was survived by three children, Henry S. Hovey, who died in 1900 without ever having married; Marian Hovey, who died on August 28, 1898, without ever having married, and whose will was admitted to probate on October 3, 1898; and Fanny H. Morse, who died in 1922 leaving as her only issue two sons, Cabot, and J. Torrey Morse. J. Torrey Morse died in 1928 without ever having married. John T. Morse, Junior, trustee under the will of George O. Hovey, was the husband of Fanny and the father of her two sons. He died in 1937. Cabot married Alice Burns in 1899, and Cabot Junior was born of the marriage in 1900. Alice died in 1941, and later that year Cabot married the respondent Anna Braden Morse, who was born in 1894. Cabot died in 1946, leaving as his only issue Cabot Junior, who died in 1948.

Upon the termination of the trust under the will of George O. Hovey in 1922, the entire trust fund was distributed by the trustee, John T. Morse, Junior, in equal shares to Cabot and J. Torrey Morse. The petitioners contend that this distribution was improper; that, instead, one sixth of the fund should have gone to the residuary trust under the will of Marian Hovey, of which Cabot at the time was one of three trustees; that Cabot had the duty to collect that one sixth for the Marian Hovey trust; and, hence, that he could rightfully receive it only as "express trustee." Shortly before his death Cabot made transfers of substantially all his "capital" to his wife, in order to reduce income taxes. See *Morse* v. *Commissioner of Corporations & Taxation*, 327 Mass. 22. These transfers, the petitioners contend, rendered him insolvent.

The answer of the respondent Augustus P. Loring, trustee, submits his rights to the determination of the court. The answers of the two other respondents (hereinafter called the respondents) raise numerous defences, and deny the invalidity of the distribution.

A fundamental controversy is whether Marian Hovey had a power of appointment under her father's will. In that will a trust was created, mainly for the benefit of his

three children for their lives. The provisions underwent some changes by a codicil, one being that the trust should terminate on the death of the survivor of Henry or Fanny. In the codicil it is stated: "In respect to the principal of the said trust created and provided for in the said eighth article or clause, I authorize each of my said three children who shall die before, or simultaneously with, the termination of said trust, to dispose of, by will or appointment, one sixth part of such principal, unless such deceased child shall leave issue her or him surviving, in which event such issue shall take, by representation, such one sixth." Later the codicil provides: "And upon the expiration of the said trust as hereinbefore limited I dispose of all of the principal of the said trust, together with any unapplied income, in the manner provided for in the said twelfth article or clause, namely, to my heirs at law, then surviving, as provided in said twelfth article or clause." The respondents argue that these two provisions are inconsistent, and that the distribution made by the trustee in 1922 was in accordance with the latter provision. The petitioners, on the other hand, contend that the latter provision merely refers to unappointed principal, and rely upon other provisions of the twelfth paragraph. As will appear, we find it unnecessary to decide the matter.

Marian Hovey, in the belief that she had the power of appointment, in her will provided: "All the residue of the property real, personal and mixed, of which I may be possessed at my death, or over which I may have any power of appointment, and especially the property of which I have power to dispose by the will of my late father, George O. Hovey, I give to the aforesaid trustees upon the following trusts: . . .." She then directed that the income be paid to her brother and sister, and after their deaths to her nephews, Cabot and Torrey, with a testamentary power of appointment in each nephew to his "wife and issue." Upon the death of the last survivor of her brother, sister, and nephews, the fund was to go to the appointees, and if there should be no living appointees, to three charitable

corporations. In *Massachusetts Institute of Technology* v. *Loring*, 327 Mass. 553, it was held that these corporations have no interest in the trust fund.

After Torrey's death without issue, Cabot was entitled to the entire income and held the power to appoint by will to his "wife and issue." With respect to the power of appointment, Marian Hovey's will contains the following limitation: "provided, that if his wife was living at my death he shall appoint to her no larger interest in the property possessed by me than a right to the income during her life, and if she was living at the death of my father, he shall appoint to her no larger interest in the property over which I have a power of disposition under the will of my father than a right to the income during her life." The wife, Anna Braden Morse, was living at Marian Hovey's death, but not at George O. Hovey's death. Accordingly, as to any property subject to her power of disposition under the will of the father, Cabot's power to appoint to his wife was not limited, but as to property of Marian Hovey, he could give his wife no more than a life interest.

The will of Cabot is very brief. The preamble declares "this to be my last will of all property of which I may die seized or possessed, or over which I may have any power of testamentary disposition at the time of my decease." In the first paragraph he appointed an executor. In the second he gave his son Cabot Junior the sum of $1 "as he is otherwise amply provided for." The third paragraph reads: "The power of appointment which I have under the wills of my aunt, Marian Hovey, and my uncle, Henry S. Hovey . . . I exercise as follows: I appoint to my wife, Anna Braden Morse, the right to the income during her lifetime of all of the property to which my power of appointment applies under the will of Marian Hovey, and I appoint to my wife the right during her widowhood to the income to which I would be entitled under the will of Henry S. Hovey if I were living." The fourth paragraph reads: "All the rest, residue and remainder of my estate, wherever situated, real or personal, in trust or otherwise, I leave outright and

in fee simple to my wife, Anna Braden Morse, of Boston, Massachusetts. If she dies before me, I give the same to her son, William John Braden, Jr.; or if he dies, then to his issue."

In *Welch* v. *Morse*, 323 Mass. 233, this court held that the partial exercise of the power by appointing only a life interest to the wife was valid. In that case no question was raised as to what disposition should be made of the trust fund after the death of Anna Braden Morse, and no opinion was expressed upon it (page 238). We likewise make no intimation upon the matter, as we are concerned not with property Marian Hovey owned herself but only with her purported appointment under the trust in her father's will.

If Cabot fully and validly exercised in favor of his wife, the respondent Morse, the special power purportedly given him by Marian Hovey to appoint property over which the latter had a general power of disposition under the will of her father, it is manifest that the respondents must prevail. The underlying reason is that any share in the distribution which the Marian Hovey trust failed to receive in 1922, and to which that trust might otherwise be entitled, has become the sole property of the respondent Morse to the exclusion of Cabot Junior. Whether Cabot fully exercised the power turns upon the construction of the third paragraph of his will, wherein he appointed a life interest to his wife; and upon the effect of the residuary clause in the fourth paragraph, read in connection with the preamble. Whether there was a valid exercise turns upon whether the power was exclusive or nonexclusive.

The execution of a power is a question of intent, and there need not be an express reference to the power. See *Gorey* v. *Guarente*, 303 Mass. 569, 575. In *Boston Safe Deposit & Trust Co.* v. *Painter*, 322 Mass. 362, it was held, with a review of authorities, that a general residuary clause operates as an execution of a general testamentary power unless substantial reasons exist for believing that the testator intended not to exercise the power. In the present cases there was

a special testamentary power, yet it might well be contended that the same canon of construction should apply where the recipients under the residuary clause are objects of the power. See American Law of Property, § 23.40. The present cases do not require us to go that far, however. Obviously, the power was not exhausted by the appointment of a life interest by the third paragraph. Giving his intention expressed in the preamble full effect, as we must, we can only conclude that the unappointed interest subject to the power was disposed of in the residuary clause. *Stone* v. *Forbes*, 189 Mass. 163, 168–170. *Pitman* v. *Pitman*, 314 Mass. 465, 474–475. Restatement: Property, § 341. The petitioners argue that in the residue the testator "does not show an intention to exercise a power of appointment." Wholly aside from the intention expressed in the preamble, that is not the test. As was pointed out in the *Painter* case, at page 367: "One of the advantages of a residuary clause in a will is that it embraces any property or interest in property which the testator may own, even though he does not have it expressly in mind, or even though he does not know that he owns it. The canon of construction under discussion causes the residuary clause to operate in the same manner upon powers of appointment. Under this canon the inquiry is not whether the will shows affirmatively an intention to exercise the power. The inquiry is whether the will shows affirmatively an intention not to exercise the power."

It may be conceded that Cabot had no specific intent to dispose of this particular property. The possibility of its existence could not have occurred to him. When his will was executed in 1941, or when a codicil adding an executor was executed in 1946, there was no property in the Marian Hovey trust derived from her father's estate, and there never had been. The inventory and the accounts of the trustees under the will of Marian Hovey disclosed no interest in the estate of George O. Hovey. Even the petitioners allege in the petition in that estate that they first learned of the alleged wrongful distribution late in 1947. The accounts of John T. Morse, Junior, trustee under the will of George O.

Hovey, which show this distribution, were allowed in the decrees sought to be revoked in the second of the present petitions. These decrees had been allowed many years before Cabot executed his will.

These considerations, however, do not advance the contentions of the petitioners. The will as a whole shows an intent to give all the testator had, save $1, to his wife, to give nothing substantial to his son, and to dispose of everything he had including property subject to appointment. It would not aid that intent to find in paragraph 3 an artificial limitation upon the operation of the residuary clause which would result to the advantage of Cabot Junior, who was "otherwise amply provided for."

We think that there was a valid exercise of the power. The pertinent language of the will of Marian Hovey is, "the trustees shall divide the trust fund in their hands into two equal parts, and shall transfer and pay over one of such parts to the use of the wife and issue of each of my said nephews as he may by will have appointed." Whether a power is exclusive or nonexclusive is a question of the donor's intent. American Law of Property, § 23.57. In the Restatement the rule is given: "The donee of a special power may, by an otherwise effective appointment, exclude one or more objects of the power from distribution of the property covered thereby, unless the donor manifests a contrary intent." Restatement: Property, § 360. If the power is nonexclusive, the amount appointed to each of its objects must be substantial. Restatement: Property, § 361. See cases in note in 100 A. L. R. 343. We think that here the power was exclusive. We observe no manifestation of a contrary intent in the will of Marian Hovey. A gift to the "wife and issue" of a nephew "as he may by will have appointed" does not require a substantial appointment to his issue. The members of the class are neither definite persons nor the immediate objects of the testatrix's bounty. When the will was made, and at her death, neither nephew was married. As matters eventuated, there was but one person in interest who was the issue of Cabot, but there well could

have been others who could have been of different genera-
tions.  We cannot believe that the creator of the power
intended to prescribe that there should be a substantial gift
to each of the issue, or at least to those who would take in
case of intestacy.  In our opinion the power was exclusive.

As this ground of opinion is decisive, we do not reach, and
do not discuss, other defences raised by the respondents.

Costs and expenses of appeal are to be in the discretion of
the Probate Court.  In each case, the entry must be

*Decree affirmed.*