FIDUCIARY TRUST COMPANY, trustee, *vs.* THE FIRST
NATIONAL BANK OF COLORADO SPRINGS, COLORADO,
trustee, & others.

Suffolk.    January 4, 1962. — March 16, 1962.

Present: WILKINS, C.J., SPALDING, WILLIAMS, CUTTER, & KIRK, JJ.

*Power.   Devise and Legacy,* Power.   *Probate Court,* Appeal.

Upon an appeal from a decree of a Probate Court in a case heard solely
on documentary evidence and a statement of agreed facts, this court's
determination of the case was not affected by the decision of the judge
of probate.   [4]

Discussion of differences between a general and a special power of ap-
pointment.   [4–11]

A general residuary clause in the will of a donee of a special testamentary
power of appointment does not operate as an exercise of the power
unless an intent of the testator that it shall so operate appears from the
will.   [11–12]

The will of a Colorado decedent having a residuary clause giving "the en-
tire remainder of . . . [his] estate of whatever kind or nature" in trust
for the benefit, apart from certain annuitants and contingent remainder-
men, of his widow and children and the issue of one of his children, but
making no reference to a special testamentary power of appointment of
which he was the donee or to the appointive property, was held in the
circumstances not to show an intent on his part to exercise the power,
although his widow and his issue were the objects of the power.   [12–14]

PETITION for instructions, filed in the Probate Court for
the county of Suffolk on May 25, 1960.

The case was heard by *Mahoney, J.*

*Warren G. Reed,* guardian ad litem, pro se, *(Jackson W. Wright, Jr.,* with him).

*George H. Kidder, (Arnold W. Hunnewell, Jr.,* with him,) for the respondent The First National Bank of Colorado Springs, Colorado, trustee, and another.

KIRK, J.   The petitioner is successor trustee of property held by it under an inter vivos trust created on May 6, 1930, by Alice H. Ware, late of this Commonwealth.   The petitioner seeks the instructions of the court as to whether a testamentary power of appointment given in the Alice H. Ware Trust (the Trust) to Francis C. Ware (Francis) late of Colorado Springs, Colorado, was duly exercised by the residuary clause in the will of said Francis.

The case comes to us on appeal by the guardian ad litem for unascertained persons from the decree, later referred to, entered by the judge of the Probate Court.   We have before us the pleadings, the trust agreement and its three amendments, the will of Francis, and a voluntary "Report of Material Facts" based on a statement of agreed facts, supplemented by a stipulation by all parties as to additional admitted facts.

There is no dispute that the question is to be determined by the law of this Commonwealth and not by the law of Colorado.   *Boston Safe Deposit & Trust Co.* v. *Painter,* 322 Mass. 362, 363, and cases cited.

Under the terms of the Trust, as amended, the trustee was to pay certain income to Alice (the creator of the Trust and the donor of the power) during her lifetime, and, on her death, to pay certain income to her son Stephen if he survived her, during his lifetime, and the balance of the income in equal shares to Alice's other surviving children, or to the widow or issue of deceased children.   Paragraph 3 of Article I of the Trust, as amended, required the trustee on the death of Stephen to divide the property "into equal shares, one being set apart for each child of the Donor . . . then living, and one such share being set apart in the case of each child of the Donor (including said Stephen) who is

then deceased leaving a widow or issue then living or who is then deceased having died after the Donor and not more than two years prior to the said division into shares.''

Paragraph 6 of Article I of the Trust, as amended, provides in part: ''Each share set apart in the case of a deceased child of the Donor at the time when the trust is divided into shares as hereinabove provided shall be disposed of as such child shall by will direct to or for the benefit of such child's widow or his issue then or thereafter living or any one or more of such widow and issue, and in default of such direction shall be paid to such child's widow then living . . . .''

Paragraph 7 of Article I of the Trust, as amended, provides in summary that ''any unappointed principal payable under paragraph 6 to the widow of a deceased child of the Donor shall be retained in trust for her and her issue, instead of being distributed to her outright.''

Alice H. Ware died April 1, 1937. Her son Francis died April 7, 1951, in Colorado Springs, Colorado. Her son Stephen died December 11, 1959. Division of the trust property was not made until Stephen's death. Surviving Francis were his widow and two sons, Francis, Jr., who is married and has two minor children, and Loring who is unmarried.

Francis's will, drawn by a Colorado attorney, was executed by him March 13, 1951, during his last illness while a patient in a Colorado Springs hospital. There is no specific reference in Francis's will to any power of appointment nor to any property over which he had a power of appointment. There are two dispositive clauses in the will. By the first clause Francis left certain personal effects to his son Francis, Jr. The second clause provides: ''I give, devise and bequeath the entire remainder of my estate of whatever kind or nature and wheresoever the same may be situated'' to The First National Bank of Colorado Springs, Colorado, in trust to pay $100 per year from the income to his friends Hurley Begun and Jeannette Begun, or to the survivor of them, such payments to continue for a period of

ten years, to pay the balance of the income to the use of his widow and his two sons for their joint lives and the life of the survivor and, on the death of the last survivor of his widow and sons, to distribute the principal to the then living issue of his son Francis, Jr., and, in default of such issue, to distribute the principal among his (i.e. Francis, the testator) brothers and their wives and issue.

The trust established by Francis in the residuary clause of his will had an inventory value of $88,033.06 and a market value on December 31, 1960, of $109,960.

The final decree entered in the Probate Court declared that the second (residuary) clause of Francis's will "was a valid and effective exercise by the said Francis C. Ware of the power of appointment given him under paragraph 6 of Article I of the Alice H. Ware Trust, as amended, insofar as the trust thereby created is for the benefit of his widow, . . . Harriet Eleanor Ware, his sons, . . . Francis C. Ware, Jr., and Loring Ware, and the issue of his said son, Francis C. Ware, Jr."

From this decree the appeal was taken.

We approach the case unaffected by the decision of the probate judge. The case is before us, as it was before him, solely on documentary evidence and a statement of agreed facts. *Pitman* v. *Pitman,* 314 Mass. 465, 475, and cases cited. *Fiduciary Trust Co.* v. *Mishou,* 321 Mass. 615, 631. *Stamper* v. *Stanwood,* 339 Mass. 549, 551.

Referring to a general power of appointment, Chief Justice Gray in *Sewall* v. *Wilmer,* 132 Mass. 131, 134, citing earlier cases, said "it has been adjudged that the mere facts that the will relied on as an execution of the power does not refer to the power, nor designate the property subject to it, and that the donee of the power has other property of his own upon which his will may operate, are not conclusive against the validity of the execution of the power; but that the question is in every case a question of the intention of the donee of the power, taking into consideration not only the terms of his will, but the circumstances surrounding him at the time of its execution, such as the source of the

power, the terms of the instrument creating it, and the extent of his present or past interest in the property subject to it . . . ." The *Sewall* case is but one of a long line of cases starting with *Amory* v. *Meredith,* 7 Allen, 397 (which cites and discusses earlier authorities) holding that, in deciding whether a general testamentary power of appointment has been exercised, the overriding consideration is whether an intention to exercise the power can be ascertained from an interpretation of the donee's will. *Worcester Bank & Trust Co.* v. *Sibley,* 287 Mass. 594, 598–599. *Gorey* v. *Guarente,* 303 Mass. 569, 575. *Frye* v. *Loring,* 330 Mass. 389, 394. From the inception, as an aid in deciding this question where an intent to exercise the power does not clearly appear from the terms of the will, there has developed a rule of construction, dealing with the exercise of a general testamentary power of appointment, which has been repeatedly affirmed. "Since the decision in *Amory* v. *Meredith,* 7 Allen, 397, it has been a settled canon of construction that a general residuary clause will operate as an execution of a general testamentary power unless a contrary intent is shown by the will. See *Willard* v. *Ware,* 10 Allen 263, 267; *Garfield* v. *State St. Trust Co.* 320 Mass. 646, 656–657; *Boston Safe Deposit & Trust Co.* v. *Painter,* 322 Mass. 362, 366, and cases cited." *Second Bank–State St. Trust Co.* v. *Yale Univ. Alumni Fund,* 338 Mass. 520, 524. *New England Trust Co.* v. *Faxon,* 343 Mass. 273, 279.

The power of appointment given to Francis under the Trust, however, was not a general testamentary power but a special or limited testamentary power of appointment. By the terms of the power, Francis could not appoint to his estate or for the benefit of his creditors. He could, in fact, appoint only to his widow and his issue. *Prescott* v. *Wordell,* 319 Mass. 118, 120. Restatement: Property, §§ 320 (2), 326. We are, therefore, faced with the question whether the canon of construction applied to general testamentary powers is also applicable to special powers of appointment. In other words, are we now to say that a general residuary clause in a will operates as an execution of

the special testamentary power unless a contrary intent is shown by the will?

Heretofore it has been unnecessary for us to answer the question (see *Stone* v. *Forbes,* 189 Mass. 163, 169, 171; *Worcester Bank & Trust Co.* v. *Sibley,* 287 Mass. 594, 598; *Pitman* v. *Pitman,* 314 Mass. 465, 475; *Frye* v. *Loring,* 330 Mass. 389, 394–395) although there was a rather strong intimation in *Stone* v. *Forbes,* 189 Mass. 163, 168–169, that the answer should be in the affirmative. The question was left open when most recently referred to. See *Frye* v. *Loring,* 330 Mass. 389, 395. Now, however, being squarely confronted with the question, we must decide it. Having had the benefit of argument by counsel and having given full consideration to the reasoning which underlies the canon applied to general testamentary powers we hold that the canon should not apply to cases involving special testamentary powers of appointment.

As was said in *Boston Safe Deposit & Trust Co.* v. *Painter,* 322 Mass. 362, at 366–367, "This canon of construction is a recognition of the fact that a general power of appointment which may be exercised in favor of the donee or his estate is a close approximation to a property interest (*Garfield* v. *State Street Trust Co.* 320 Mass. 646, 656) and can well have been intended to be comprehended within words adapted to the passing of a property interest." Similar observations on the nature of such a power were made in *Old Colony Trust Co.* v. *Allen,* 307 Mass. 40, 42, and in *Fiduciary Trust Co.* v. *Mishou,* 321 Mass. 615, 625. Moreover, the distinction between a general power and a special power has resulted in the application of different principles to each, respectively, in several different situations.

For example, it is settled that, where a donee of a general testamentary power of appointment exercises it, the appointed property can be reached by the donee's creditors if the other assets of the donee are insufficient to pay the creditors' claims.[1] *Clapp* v. *Ingraham,* 126 Mass. 200, 202.

---

[1] See *Restatement: Property,* § 330, with respect to a general power exercisable inter vivos.

*State St. Trust Co.* v. *Kissel,* 302 Mass. 328, 333. *National Shawmut Bank* v. *Joy,* 315 Mass. 457, 472. See *Boston Safe Deposit & Trust Co.* v. *Alfred Univ.* 339 Mass. 82, 88; *Curtis* v. *Commissioner of Corps. & Taxn.* 340 Mass. 169, 171; Restatement: Property, § 329; Scott, Trusts (2d ed.) § 158.1, pp. 1131–1132. Creditors of the donee of a special power, on the other hand, cannot reach the appointive property whether or not the power has been exercised.[2] *Prescott* v. *Wordell,* 319 Mass. 118, 120. Restatement: Property, § 326.

Again, "It is a recognized principle in the law of property that where the donee of a general power attempts to make an appointment that fails, but where, nevertheless, the donee has manifested an intent wholly to withdraw the appointive property from the operation of the instrument creating the power for all purposes and not merely for the purposes of the invalid appointment, the attempted appointment will commonly be effective to the extent of causing the appointive property to be taken out of the original instrument and to become in effect part of the estate of the donee of the power." *Fiduciary Trust Co.* v. *Mishou,* 321 Mass. 615, 624, and cases cited. This so called principle of "capture" (*Amerige* v. *Attorney Gen.* 324 Mass. 648, 656) which, "like some other principles applicable to general powers of appointment, owes its origin to the conception that the grant of a general power is in itself almost tantamount to a grant of ownership" (*Old Colony Trust Co.* v. *Allen,* 307 Mass. 40, 42) has no application in cases of special powers, where the ineffectively appointed property passes to takers in default of appointment (*Thayer* v. *Rivers,* 179 Mass. 280, 290; *Hooper* v. *Hooper,* 203 Mass. 50, 58–59; see *Old Colony Trust Co.* v. *Richardson,* 297 Mass.

---

[2] Other considerations arise if the donee of the special power was formerly the owner of the appointive property and had transferred it in fraud of his creditors, retaining only the special power of appointment. Any right of the creditors to reach the appointive property in such a case, however, would be based on the fraudulent conveyance and not on the fact that the debtor had retained a special power of appointment in the property transferred. Restatement: Property, § 326, esp. comment b. See *Prescott* v. *Wordell,* 319 Mass. 118, 120.

147, 155) or, in some cases, to the objects of the power where there are no takers in default provided. See *Massachusetts Inst. of Technology* v. *Loring,* 327 Mass. 553, 556; Restatement: Property, § 367 (2); Scott, Trusts (2d ed.) § 27.1. Compare *Old Colony Trust Co.* v. *Richardson,* 297 Mass. 147, 155.

Moreover, the extent to which the donee of a power of appointment may, in the exercise of the power, create new powers in the appointees has been held to depend on whether the original power is general or special. Compare *Thayer* v. *Rivers,* 179 Mass. 280, 289–290, with *Garfield* v. *State St. Trust Co.* 320 Mass. 646, 655–656. See Restatement: Property, §§ 357, 359; Simes and Smith, Law of Future Interests (2d ed.) § 977, pp. 451–454; Am. Law of Property, § 23.49.

Reference may also appropriately be made to the distinction observed, in cases involving the rule against perpetuities, between appointments made under a general power exercisable inter vivos (period of the "rule" measured from the date of the exercise of the power; see *Minot* v. *Paine,* 230 Mass. 514, 521–522 [dictum]; Newhall, Future Interests and the Rule against Perpetuities in Massachusetts [3d ed.], § 45, pp. 126–128; Am. Law of Property, § 24.33; Restatement: Property, § 391) and a special power (period of the "rule" measured from the date of the creation of the power; *Greenough* v. *Osgood,* 235 Mass. 235, 242, Newhall, Future Interests and the Rule against Perpetuities in Massachusetts [3d ed.] § 45, pp. 121–126; Am. Law of Property, § 24.34, Restatement: Property, § 392[3]).

The situations referred to above by no means constitute an exhaustive enumeration of the instances wherein the difference between a general and a special power has been recognized. "The fundamental nature of the distinction be-

---

[3] In the case of a general (or special) power which is exercisable only by will and which, therefore, cannot be practically equated with ownership to the same degree as a general power exercisable inter vivos, we have held that, as in the case of special power, the period of the "rule" is measured from the date of the creation of the power. *Minot* v. *Paine,* 230 Mass. 514, 523. *Fiduciary Trust Co.* v. *Mishou,* 321 Mass. 615, 622. *Amerige* v. *Attorney Gen.* 324 Mass. 648, 656. For the applicability of the so called "second look" doctrine to the "rule," see *Sears* v. *Coolidge,* 329 Mass. 340, 345–346.

tween powers of these two types is apparent upon even a casual consideration; and it is significant at almost every point in the law of powers." Am. Law of Property, § 23.4. See also *id.* § 23.5.

The "fundamental nature of the distinction between powers of these two types" consists in the difference in the extent of dispositive power over the appointive property. From this root difference have stemmed the distinctions drawn in the cited situations. It is the presence of the virtually unlimited power of disposition in general testamentary powers which is the genesis of the canon of construction applied to such powers. It is the absence of the virtually unlimited power of disposition in special powers which leads us to the conclusion that the canon should not apply to special powers. We think that, unlike a general power, a special power is not "a close approximation to a property interest . . . [which] can well have been intended to be comprehended within words adapted to the passing of a property interest." *Boston Safe Deposit & Trust Co.* v. *Painter,* 322 Mass. 362, 366–367. It is our opinion that the traditional common law distinction between "property" and "powers" (*National Shawmut Bank* v. *Joy,* 315 Mass. 457, 472–473, and cases cited), which with regard to general powers has in effect been overridden in the cases cited above, persists with undiminished validity in the case of special powers and would alone serve as a sufficiently sound rationale for the nonapplicability of the canon in question to special powers.

There are, however, other considerations, less involved in the niceties of property law, which indicate the same result. The donee of a general testamentary power can appoint the property to anyone, including his own estate. It well may be that a layman with such extensive power of disposition over property is not to be expected to distinguish between such property and that in which he has, in addition to such power of disposal, what the law calls "title" or a "property interest" and that he can reasonably be presumed to regard this appointive property as his own. The donee of a special testamentary power, however, can, by definition, appoint

only to a limited class of persons exclusive of his estate. It would in our opinion be unreasonable to presume that a layman with such a limited power of disposal over property would regard such appointive property as his own. He would more likely consider himself to be, as the donor of the power intended, merely the person chosen by the donor to decide who of the possible appointees should share in the property (if the power is exclusive), and the respective shares of the appointees.

It would seem that the foregoing considerations alone would preclude our following any intimation in past cases contrary to the result we reach. We note, however, that in *Stone* v. *Forbes* the court stated: "There would seem to be no good reason . . . why the distinction between a power and property, which has resulted in many instances, as courts have been compelled to admit, in defeating the intention of the testator should be adhered to in cases where as in the present the donee of the power has the use of the property for his life and may, not unnaturally or unreasonably, have failed to distinguish between property strictly and technically belonging to him and that of which he has the use." 189 Mass. 163, 169. Prior use and enjoyment of the appointive property can properly be considered as one of the conditions surrounding the execution of a will which allegedly exercises the power. In appropriate circumstances it may well be the deciding factor. We do not think, however, that such prior use alone should give rise to the presumption contained in the canon of construction where we are dealing only with a special power. As stated previously, the canon is based on a presumed confusion by a testator between property he owns outright and that which he can dispose of by his will to anyone he wishes. The presumed confusion results from the nature and extent of his power of disposition and not from his right to enjoy and use the property during his life. *Boston Safe Deposit & Trust Co.* v. *Painter,* 322 Mass. 362, 366.

In *Frye* v. *Loring,* 330 Mass. 389, 394–395, it was said in passing: "In the present cases there was a special testamentary power, yet it might well be contended that the same

canon of construction should apply where the recipients under the residuary clause are objects of the power.'' Again, we think that coincidence between the objects of a special testamentary power and the recipient under a residuary clause is a relevant circumstance on the issue of the donee's intent to exercise the power by his residuary clause. We do not think, however, that it is sufficient to raise a presumption which would be embodied in the canon of construction under consideration. In the first place, the probative value of such a circumstance would depend on a multitude of variables, e.g., the degree of coincidence between the potential appointees and the recipients under the residuary clause, whether the special power is exclusive or nonexclusive (see *Frye* v. *Loring,* 330 Mass. 389, 396–397) and whether the objects of the special power would, in any event, be natural objects of the donee's bounty. Secondly, if coincidence of potential appointees and recipients under the residuary clause were sufficient to raise the presumption of intent to exercise the power, it would be because of the coincidence alone and not because of the peculiar nature of a residuary clause. From such a rule it would follow, for example, that, if the appointive property consisted of money and the donee by will left a cash legacy to the objects of the special power, we would be obliged, in the absence of evidence in the will to the contrary, to hold that the coincidence of the objects of the power with the beneficiaries of the legacy operated to make the legacy an exercise of the special power of appointment. Yet we think such a rule would certainly be a misconception of the rationale underlying the canon in question and the role of a residuary clause in this rationale. See *Boston Safe Deposit & Trust Co.* v. *Painter,* 322 Mass. 362, 367.

We, therefore, hold that the canon of construction applicable to general testamentary powers of appointment does not apply to special testamentary powers of appointment. It follows that in the case of a special power, as here, our inquiry is not ''whether the will shows affirmatively an intention not to exercise the power'' (*Boston Safe*

*Deposit & Trust Co.* v. *Painter, supra*). Rather the question is, as we stated at the outset, whether we can discover in the will, read in the light of conditions surrounding its execution, a sufficiently declared intention on the part of Francis to exercise the power, having in mind that the " 'province of the court is not to conjecture what the testator's intention was and then read it into the will, but to ascertain his intention by construing the words which he used as the declaration of it.' *Sanger* v. *Bourke,* 209 Mass. 481, 486, 487, and cases cited." *Gorey* v. *Guarente,* 303 Mass. 569, 575.

We hold that on the record before us the intention of Francis to exercise the power is in fact left to conjecture and, consequently, the property subject to the power passes under paragraphs 6 and 7 of Article I of the Trust, as amended, to the takers in default of appointment. As mentioned previously, there is no reference in Francis's will to a power of appointment, nor is there reference to property which is the subject of a power of appointment. There were sufficient assets in the personal estate of Francis to carry out the provisions of his residuary clause.

The trustee under Francis's will places stress on the fact that apart from the annuity to Francis's two friends and the contingent remainder interests to Francis's brothers and their families, the recipients under the residuary clause were objects of the power. Wholly aside from the fact that some of the recipients under the residuary clause were not objects of the power, we think that the coincidence relied upon is of little significance. In the normal course of events, we would expect that Francis's widow and issue, as natural objects of his bounty, would be provided for in Francis's will. The trust set up by Francis in the residuary clause is the sole provision made for them. In such a case the inference that the residuary clause was also intended to exercise the power is hardly compelling. Moreover, the Trust provides that, in default of appointment by Francis, his widow and issue are to share the unappointed principal (although not in the same manner as if the prin-

cipal were appointed under the residuary clause). From this fact, in the absence of any reference to the power in the will, it is at least equally inferable that Francis was content to allow the property to pass under the takers-in-default provision of the Alice H. Ware Trust.[4]

In the last analysis we are left only with the introductory terms of the residuary clause where Francis disposed of "the entire remainder of my estate of whatever kind or nature and wheresoever the same may be situated . . .." We have in mind that "It is the general rule that the intent of a testator is not to be thwarted by refinements and distinctions resting upon subtlety and ingenuity or by lack of technical accuracy in the use of words or by unduly stressing the literal meaning of a few words or by attaching to them a hard and fast meaning which is not in consonance with the setting in which they are employed." *Beals* v. *Magenis*, 307 Mass. 547, 552, and cases cited. We think, however, that it would be unreasonable to construe the introductory language of the residuary clause as a manifestation of an intent by Francis to include in such clause not only property owned by him beneficially but also property over which he had merely a limited power of disposition. Compare *Frye* v. *Loring*, 330 Mass. 389, 393, 395 (where the preamble of the will declared that the will was to dispose of not only property owned by the testator but also property "over which I may have any power of testamentary disposition at the time of my decease"). See *Pitman* v. *Pitman*, 314 Mass. 465, 474, 475 (where the testator's will "contained a residuary clause devising and bequeathing his own property and that over which he had a power of appointment"); Restatement: Property, § 341. To construe the introductory language of the residuary clause in such a manner

---

[4] It appears that Francis's will was drawn by a Colorado attorney. There is, in our opinion, special force in the argument made by the guardian ad litem that the failure of the attorney to include in the will any reference to a power of appointment indicates that his client, Francis, did not intend to exercise the power by his will because the residuary clause in Francis's will would not of itself have exercised the power under the law of Colorado. See *Johnson* v. *Shriver*, 121 Colo. 397, 406–407 (decided March 20, 1950, and brought to the attention of the court under G. L. c. 233, § 70).

would be the equivalent of adopting the canon of construction which we have decided is not applicable.

The final decree of the Probate Court must be reversed and a decree entered declaring that the power of appointment given to Francis under paragraph 6 of Article I of the Trust was not exercised by Francis's will and that the appointive property should be retained by the petitioner under the in-default-of-appointment provisions of the Trust.

*So ordered.*