CHARLES U. COTTING *vs.* ANNA DE SARTIGES *et als.*

In the case of a testamentary power of appointment of personalty, the question, whether the power has been exercised and an appointment made, must be decided by the law of the domicile of the donor of the power.

When nothing appears to show an intention to exercise the power, the court cannot infer such an intention.

B., domiciled in Rhode Island, gave by will to R., domiciled in New York, a power of appointment by will over personalty. B.'s will was dated 1879 and proved 1882. R. died in 1889, leaving a will executed in England in 1881. R.'s will contained a general residuary clause, but no specific execution of the power of appointment, and no mention of the fund as to which the power was given. By statute in England and in New York, R.'s will was an execution of the power, no such statute existing in Rhode Island.

*Held*, that the question, whether R.'s will executed the power given by B., was to be decided by the law of Rhode Island.

*Held*, further, that R.'s will did not execute the power of appointment given to R. by the will of B.

BILL IN EQUITY for instructions and for the administration of a trust.

*Newport, March* 28, 1892. STINESS, J. The complainant, trustee under the will of Mary M. Bourne, late of Newport, deceased, brings this bill, practically a bill for instructions, for the distribution of the trust fund, and the case is submitted on bill, answer, and proofs. The will was dated September 30, 1879, and admitted to probate in Newport, January 16, 1882. The testatrix bequeathed one sixth of her residuary estate to the complainant in trust for the benefit of her grandson, Charles Allen Thorndike Rice, during his life, and upon his decease to transfer and pay over

the same to his issue, if he should leave any, as he should appoint " by will, or instrument in the nature thereof, executed in the presence of three or more witnesses ; and if he leaves no issue, to and among such persons, and upon such uses and trusts, as he shall so appoint ; " and in default of such appointment and issue, to and among those who should then be her heirs at law.

The grandson died in New York, May 16, 1889, without issue ; leaving a will executed in England, September 17, 1881, which was duly probated in New York, where he was domiciled at his death. The will did not specifically dispose of the trust fund, which was subject to Mr. Rice's appointment, nor make any mention of it. The complainant is both trustee under the will of Mrs. Bourne and executor of the will of Mr. Rice. In the latter capacity he claims the right to receive and distribute the fund, as one which passes by appointment to the legatees under Rice's will. On the other hand, the heirs of Mrs. Bourne contend that there is a default of appointment, and so, under the will, the fund goes to them. The issue now raised, therefore, is whether there has been an execution of the power by the general residuary clause of Mr. Rice's will. Upon this issue our first inquiry must be, by what law the execution of the power is to be determined. It is admitted that both in England, where the will was executed, and in New York, where the donee of the power was domiciled, there are statutory provisions to the effect that a general devise or bequest will include property over which the testator has power of appointment, and will operate as an execution of such power, unless an intention not to execute the power shall appear by the will. If, therefore, the question is to be determined by the law of either England or New York, the power has been executed. Clearly the mere accident that Mr. Rice's will was executed in England, while he was temporarily there awaiting a steamer, cannot control its operation by impressing upon it the law of the place where it was made. It was neither the domicile of the testator, nor the *situs* of the property, nor the *forum* where the question comes for determination. *Caulfield* v. *Sullivan*, 85 N. Y. 153. The property in dispute being personal property, which, strictly speaking, has no *situs*, the question must be decided by the law either of New York, the domicile of the donee of the power, or of this State, the dom-

icile of the donor. The will is a Rhode Island will; it disposes of property belonging to a resident of Rhode Island; the trustee under the will is, in effect, a Rhode Island trustee, and jurisdiction over the trustee and the fund is here. The fund in question belonged to Mrs. Bourne, and never belonged to Mr. Rice. True, he had the income from it for life, and power to dispose of it at death; practically the dominion of an owner, and yet it was not his.

The fund, then, being a Rhode Island fund, disposable under a Rhode Island will, it follows, naturally and necessarily, that the fact of its disposition must be determined by Rhode Island law.

The question is not what intent is to be imputed to the will of Mr. Rice, but what intent is to be imputed to the will of Mrs. Bourne. She authorized a disposition of her property by an appointment, and it is under her will that the question arises whether an appointment has been made. Her will is to be adjudged by the law of her domicile. So far as assumptions of intent may be made, it is to be presumed she intended the appointment to be made according to the law of her domicile, and not by the law of New York or England, or any other place where the donee of the power might happen to live. It is not the fact of Mrs. Bourne's ownership of the property which points to the law of this State as the criterion, but the fact that her will is the controlling instrument in the disposition of the property. Precisely this question arose in *Sewall* v. *Wilmer*, 132 Mass. 131, where Judge Gray remarked that the question is singularly free of direct authority. In that case a Massachusetts testator gave to his daughter a power of appointment of certain property. The daughter lived in Maryland, where she died, leaving a will devising all her property to her husband, but making no mention of the power. In Massachusetts this was an execution of the power, but in Maryland it was not; and the question arose which law should govern. It was held that the will of the father was the controlling instrument, and hence that the law of his domicile was to apply. The same decision was made in *Bingham's Appeal*, 64 Pa. St. 345, which is cited in *Sewall* v. *Wilmer* with approval. In England, also, it has been held that the validity of the execution of a power is to be

determined by the law of the domicile of the donor of the power. *Tatnall* v. *Haukey*, 2 Moore P. C. 342; *In re Alexander*, 6 Jur. N. S. 354.

The principle on which these cases proceed is that to which we have already alluded, viz., that the appointer is merely the instrument by whom the original testator designates the beneficiary, and the appointee takes under the original will, and not from the donee of the power. The law of the domicile of the original testator is, therefore, the appropriate test of an execution of a power. The case of *D'Huart* v. *Harkness*, 34 Beav. 324, 328, apparently holds the contrary, but, we think, only apparently. In that case property was held under an English will, with power of appointment, by will, in a woman domiciled in France. She died, leaving a holograph which was valid as a will in France, but not in England. Under the Wills Act it was admitted to probate in England as a foreign will, which gave it all the validity of an English will. The probate in England was held to be conclusive that it was a good will according to English law, and being a will it executed the power. The case was really decided by the law of England. While there are numerous decisions upon the general rule that a will is to be governed by the law of the testator's domicile, such decisions are not to be confounded with the present question: Which testator is the one to be considered in the case of a testamentary power? We know of no case which applies the law of the domicile of the donee of the power without reference to that of the donor. For these reasons we think the law of the domicile of the donor of the power should control, and hence that the law of Rhode Island must govern in this case.

What is the law of Rhode Island relating to the execution of a power? In *Phillips* v. *Brown*, 16 R. I. 279, the general rule of construction, laid down by Kent, both as to deeds and wills, that if an interest and a power coexist in the same person, an act done without reference to the power will be applied to the interest and not to the power, was examined and followed. The same rule was also followed in *Grundy* v. *Hadfield*, 16 R. I. 579, and in *Brown* v. *Phillips*, 16 R. I. 612. In *Matteson* v. *Goddard*, *ante*, p. 299, it was held that a general residuary clause in a will did not execute

a subsequently created power of appointment. While those cases are not decisive of this one, the reasoning upon which they rest is equally applicable, viz., where nothing appears to show an intent to execute a power, the court cannot infer an intent to do so. This was the almost uniform rule prior to the adoption of statutes upon this subject. In New York and in England it was thought that the rule often defeated the intention of testators who probably intended to dispose of everything they had power to dispose of ; and so acts were passed which carried property, over which one had a power of appointment, by a general gift of his own property, unless an intention not to execute the power appeared. We do not see that the reason upon which such statutes are based is conclusive. It is equally open to conjecture that one who means to execute a power will signify in some way an intention to do so. If a computation could be made, it would doubtless appear that, in the execution of powers, a large majority of wills make proper reference to the power. The statute gives an arbitrary direction, against which, it seems to us, the reason is stronger than for it. The rule already recognized in this State is as applicable to wills as to deeds, and in our opinion it should be so applied. The same rule is laid down in *Mines* v. *Gambrill*, 71 Md. 30 ; *Hollister* v. *Shaw*, 46 Conn. 248 ; *Funk* v. *Eggleston*, 92 Ill. 515 ; *Bilderbach* v. *Boyce*, 14 S. Car. 528, and cases cited in our previous opinions. The same rule also prevailed in England, New York, and Pennsylvania prior to the passage of statutes. In Massachusetts alone was a contrary rule adopted by the court. The law, therefore, has been practically uniform except as it has been changed by statutes. It is urged that these statutes show a tendency of opinion which the court should follow by adopting the rule of the statutes. The opportunity to make law is alluring, but it tempts beyond the judicial path. As our province is to declare law rather than to make it, we deem it our duty to adhere to the rule which is commended to us by reason and precedent until, as elsewhere, it shall be changed by legislative authority. If such a rule be the wiser one, the legislature can enact it ; but outside of a statute it is hard to see upon what ground a court can decree an intention to execute a power when in fact no such intention is in

any way evinced. Applying to this case, then, the rule that, to support an execution of a power, something must appear to show an intent to execute it, we come to the inquiry whether such an intent appears. To solve this we must look to the will itself and not to extrinsic facts, except as they enter into and give color to the will. In the will there is no reference to the power, but it is urged that an intention to execute the power is to be inferred from its contents and the circumstances of its execution. It is claimed that Rice's relations with his grandmother were so intimate as to raise a presumption that he knew the contents of her will, especially in view of the fact that his bequests exceeded the amount of his own estate. Rice's will was made at Liverpool pursuant to a suggestion from the complainant that, owing to the will of his grandmother, he ought not to cross the ocean without making his will. He received $625,000 outright under his grandmother's will, beside the income of one sixth of the residuary estate for life, with the power of appointment. If he knew of this power, it is most natural that he would in some way have referred to it. If he knew the amount absolutely bequeathed to him, or expected a large bequest, it would account for all the legacies in his will. After he knew of the power of appointment he did not change his will. Perhaps his mind so dwelt upon the legacy of $625,000 that he gave no thought to a possible appointment of one fifth of that amount in the residuary clause ; or perhaps, after hearing of the power, he intended some time to make a disposition of it. But, however it was, he gave no sign as to the power. The fact that at the time of his death his estate was somewhat less than his bequests is not significant ; for evidently he was not a close financier, and gave little heed to the depreciation of his estate. The deficiency, however, is not so marked as to raise a presumption in favor of the execution of the power, even if we could properly look to that fact for that purpose. This and several other interesting legal questions have been raised and ably presented, upon the point of intention, but we do not deem it necessary to pass upon them, inasmuch as we do not find from the facts any sufficient or satisfactory evidence of an intention to execute the power. We therefore decide that the fund in question did not so pass by appointment

under the will of Mr. Rice, and therefore belongs to the heirs of Mrs. Bourne according to the terms of her will.

*Decree accordingly.*

*William P. Sheffield & John E. Parsons,* for complainant.

*Middleton S. Burrill, John E. Burrill, George Zabriskie & Francis B. Peckham,* for respondents, the heirs of Mrs. Bourne.

*H. B. Clossen & John E. Parsons,* for the executor of Rice.