WORCESTER BANK AND TRUST COMPANY, trustee, *vs.* WILLIS E. SIBLEY, executor, & others.

Worcester. March 9, 1933. — September 13, 1934.

Present: CROSBY, WAIT, FIELD, DONAHUE, & LUMMUS, JJ.

*Devise and Legacy*, Power of appointment.

*Whether* the general rule, that, in the absence of anything to show a contrary intention, a general power of appointment is well executed by a general residuary clause in the will of the donee, is applicable to a limited power, was not determined.

A testator, whose wife, but no children, survived him, among other provisions in his will for his wife gave her a legacy, stating, "we agree as to the ultimate . . . disposition of any balance [of the legacy] remaining at her decease." The will provided for the establishment from the residue of a trust fund which should not be less than $80,000, with a power to his wife to dispose by will of the principal thereof after the termination of certain life interests, "clothing her with full authority to carry out by her will my understood desire, but such power is not intended to authorize the distribution of any substantial part of such fund among either her or my next of kin or relatives, the main purpose being that if any of the persons or institutions among whom the residue is to be distributed by this instrument decease or become unworthy of receiving it, or any charitable organization ceases to exist or is improperly managed, or substantially changes its character or present purposes, the fund I designed for it may be transferred in this manner to persons or organizations more in har-

mony with my present plans"; and in default of appointment by the wife, the principal was directed to be distributed to three individuals and to various charitable, religious, educational and fraternal organizations and societies. The wife by her will gave the residue of her estate to an individual, who survived her and was not related to her husband or herself, "upon a precatory trust" to be defined in a letter "to be left in" her safe deposit box. There was no such letter nor any oral instructions to such individual. None of the beneficiaries named by the husband had become unworthy or unfit and no charitable institution named by him had ceased to exist or was improperly managed or had substantially changed its character or purposes. The provisions of the wife's will contemplated a possibility of the estate to which they should apply being insufficient to fulfill her bequests, whereas she knew that the amount of the fund over which she had a power of appointment was more than ample to satisfy them. *Held*, that by her will, read in connection with all the facts and circumstances known to her, she did not intend to execute and did not by her will execute the power of appointment given to her by the will of her husband.

PETITION, filed in the Probate Court for the county of Worcester on July 7, 1932, by the trustee under the will of Alfred S. Pinkerton, late of Worcester, for instructions.

The petition was heard by *Atwood*, J. It was agreed by the parties that Margarett P. Beede, named in the will of Betsey C. Pinkerton, was living, and that she was not related to either Alfred S. or Betsey C. Pinkerton; and that "None of the persons or institutions named in the will of Alfred S. Pinkerton have become unworthy and no charitable institution named by him has ceased to exist or is improperly managed or has substantially changed its character or purposes." Other material facts shown by the pleadings and agreed upon by the parties are stated in the opinion.

From a decree that a power of appointment given by the will of the petitioner's testator was not exercised in the will of his wife, the executor of the wife's will appealed.

*B. B. Gilman*, stated the case.

*E. T. Esty*, for Worcester Bank and Trust Company, trustee, respondent.

*R. B. Dodge*, for Odd Fellows Home of Massachusetts.

*W. E. Sibley*, for Willis E. Sibley, executor, submitted a brief.

*F. C. Smith, Jr., G. A. Gaskill, & S. G. Barker,* for Worcester Academy and another, submitted a brief.

*A. H. Bullock,* for Massachusetts Society for the Prevention of Cruelty to Children (Worcester Branch), & *D. W. Lincoln,* for Laymen's League of the Unitarian Church of the Second Parish of Worcester and another, submitted a brief.

DONAHUE, J.    The trustee named in the twenty-third clause of the will of Alfred S. Pinkerton has brought a petition in the Probate Court for instructions.    It seeks a construction of that clause and a determination of the question whether the power of appointment there given to the testator's wife was exercised by her in her will in whole or in part and if so to what extent.

The will of the testator, after providing in prior clauses many legacies, by the twenty-third clause gave the residue of his estate in trust and directed that the income from the fund be paid to his wife for life and upon her death to her sister Anna M. Chapin during her life.    That clause further provided: "I empower my wife to dispose of by her will any residue of said trust fund, whether principal or accumulated income, which shall remain in the hands or possession of said trustee or the successors after the decease of Anna M. Chapin and my wife, clothing her with full authority to carry out by her will my understood desire, but such power is not intended to authorize the distribution of any substantial part of such fund among either her or my next of kin or relatives, the main purpose being that if any of the persons or institutions among whom the residue is to be distributed by this instrument decease or become unworthy of receiving it, or any charitable organization ceases to exist or is improperly managed, or substantially changes its character or present purposes, the fund I designed for it may be transferred in this manner to persons or organizations more in harmony with my present plans.    My wish is that it be mainly used for charitable purposes, preference being given to deserving children or young people seeking education or to organizations or agencies having such main purpose in view."    The clause

in question further provided that in the event that the testator's wife did not execute the power given and dispose of the trust fund and its accumulations remaining at the decease of the wife and her sister, "The residue of said fund after the creation [by the trustee] of . . . three trusts . . . [of $5,000 each] I give and bequeath as follows: . . . ." Then follow legacies to three individuals and to various charitable, religious, educational and fraternal organizations and societies, disposing of the residue of the trust fund.

The testator's wife, who outlived her sister, by will gave legacies to relatives and friends and to various philanthropic, religious, educational and charitable organizations and societies. She gave her household and personal effects to Margarett P. Beede, who was a friend but not a relative, the will stating: "it being my wish that she should make distribution of such of them as I may designate in accordance with a paper which I intend to leave in my safe deposit box." The clause disposing of the residue of the wife's estate reads as follows: "THIRTY–THIRD: All the residue of my estate I give and bequeath to said Margarett P. Beede, should she survive me, upon a precatory trust, the terms of which will appear in a letter to her to be left by me in my safe deposit box. Should she die before I do I give and bequeath said residue in equal shares to the Worcester Boys Club, the Worcester Society for the Prevention of Cruelty to Children, the Worcester Young Mens Christian Association, the Worcester Fresh Air Fund, and the Worcester Young Women's Christian Association, all located in said Worcester." The testatrix left no letter addressed to Margarett P. Beede in her safe deposit box relative to the terms of the trust referred to in the residuary clause of the will. No such letter has elsewhere been found. She never communicated to Margarett P. Beede the terms of any such trust.

No oral or documentary evidence was introduced at the hearing before the probate judge. Most of the facts stated in the petition were admitted. The judge's report of material facts states that his "findings and decision are based

upon pleadings, upon the agreed facts and my inferences drawn" therefrom. He found that the testator's wife did not intend to exercise her power of appointment given by his will and that she did not actually do so. He entered a final decree which declared that the testator by his will gave to his wife a special power of appointment by her will, that she did not exercise the power, and ordered that the residue of the fund in the hands of the trustee petitioner be distributed as provided in the twenty-third clause of the will of Alfred S. Pinkerton in the event that the power granted was not exercised. The executor of the will of the testator's wife has appealed from that decree.

It is settled in this Commonwealth that "a general power of appointment is well executed in the absence of anything to show a contrary intention by a general residuary clause in the will of the donee." *Butler* v. *New England Trust Co.* 259 Mass. 39, 44, and cases cited. The authority here given to the donor's wife was a limited and not a general power of appointment. Neither kind of power of appointment can be held to have been executed by the residuary clause of a donee's will if it was not the intention of the donee to execute such power. Since we reach the conclusion that the donee did not intend to execute the power given her it is not necessary here to decide whether the rule as to general powers above stated in all its implications is applicable to limited powers (see *Stone* v. *Forbes*, 189 Mass. 163, 168, 169).

The will of the donee did not in terms express her intention to execute the power given or to deal with the trust fund. The question of her intention so to do must be determined by the construction of her will; ". . . the mere facts that the will relied on as an execution of the power does not refer to the power, nor designate the property subject to it, and that the donee of the power has other property of his own upon which his will may operate, are not conclusive against the validity of the execution of the power; but . . . the question is in every case a question of the intention of the donee of the power, taking into consideration not only the terms of his will, but the cir-

cumstances surrounding him at the time of its execution, such as the source of the power, the terms of the instrument creating it, and the extent of his present or past interest in the property subject to it." *Sewall* v. *Wilmer,* 132 Mass. 131, 134.   *Talbot* v. *Riggs, ante,* 144, 147–148.

The fund whose distribution is here involved was the property of the donor and not of his wife.   He had no children.   He possessed a considerable fortune.   The terms and provisions of his will manifest the general purpose to provide amply for his wife, in whom he had great confidence, for the remainder of her life, to give legacies, comparatively small, to certain friends and relatives and to various branches of a fraternal order of which he was a member, and to create a trust fund which he specified must in any event amount to at least $80,000, the principal of which was for the most part eventually to go to fraternal, educational and charitable organizations.   He set forth in his will a comprehensive plan for the distribution of the principal of the trust fund in the event that his wife did not by her will exercise the power given her.   He named the various individuals and organizations which, if the granted power was not exercised by his wife, should after her death become recipients of his bounty.   He refers in general terms to these contemplated beneficiaries in the sentence of his will which declares the power vested in his wife and purports to state its "main purpose."   That purpose was to enable his wife to substitute for any beneficiary nominated by him to take in the event the granted power was not exercised, who should after his death become unworthy or unable effectively to carry out his charitable design, some beneficiary who would be thus worthy and able.   The authority given to his wife was "to carry out by her will my understood desire."   It is manifest that he believed that his wife's general views as to the character of charitable work which it was desirable to encourage and support coincided with his own views.   In another part of the will which gave an outright legacy of $30,000 to her he said: "we agree as to the ultimate . . . disposition of any balance [of the amount of her legacy] remaining at her

decease, and as to those whom we should like to help." A comparison of the philanthropic and charitable bequests in the wills of husband and wife gives confirmation .to his belief that her views on the matter of selecting charitable beneficiaries were in harmony with his.

The donor's will left in his wife a broad discretion in determining whether the ultimate beneficiaries, as selected by him in his lifetime, had after his death become unworthy or unfit to participate. The authority given was not unlimited; it was to be exercised to further the husband's "understood desire." There is nothing in the instrument which has any tendency to show that the wife was empowered to thwart his expressed desires. It would be a violation of the faith reposed in her by her husband if, arbitrarily and without the exercise of discretion or judgment, she eliminated beneficiaries he had. selected. *Talbot* v. *Field*, 173 Mass. 188, 193. It is agreed by the parties that none of the thirteen beneficiaries named by the donor as contemplated recipients of the principal of the trust fund have in fact become unworthy or unfit. It is hardly conceivable that the donee in the exercise of discretion determined that they all had become ineligible. It is an unreasonable construction of the donee's will to hold that, without mentioning therein the power, or the fund, or the beneficiaries named therein by her husband, either ignoring the confidence her husband had placed in her or determining that every one of the named beneficiaries had become unworthy or unfit, she intended by the residuary clause of her will to exercise the power given her.

The will of the testator's wife, which was executed six months before her death, contained legacies aggregating $48,200. The inventory filed by her executor valued her estate at a little over $36,000. Her will provided that if her estate proved insufficient to pay all the legacies and leave a residue of $10,000, the two largest legacies totalling $23,000 should be proportionally abated to such sums as would leave a balance of $10,000 to pass under the residuary clause of her will. Her insistence on such a provision at the expense of legacies earlier given is inconsistent with

her having the contemporaneous intention by the residuary clause to appoint to the legatee there named the large fund over which she held the power of appointment. As she must have known, that fund, when originally paid over to the trustee by herself and her coexecutor of her husband's will, amounted to over $129,000 and was never less than $100,000 during the nine years that she survived her husband.

The power given to the testatrix could be exercised by her only by will. The residuary clause of her will purported to create a "precatory trust" the terms of which are not expressed in that instrument. They were nowhere expressed, although she intended apparently at some future time to write and leave in her safe deposit box a letter containing the terms of such trust. This she did not do and she never even communicated the terms of any such trust to her residuary legatee. The exercise of the power given by her husband must in her mind have carried with it a sense of responsibility as to carrying out his wishes and as to the interests of the beneficiaries he had selected. There is nothing in the record to indicate a likelihood that she intended to make uncertain and unascertainable what her husband by his will was so solicitous to make certain, that is, the worthiness and fitness of those who should share the fund. It is much more reasonable to hold that the residuary clause expresses her thought as to a contemplated trust of a portion of her own personal estate which was in fact so small that $10,000 might constitute the residue.

We are of the opinion that the testatrix by her will read in connection with all the facts and circumstances known to her did not intend to execute and did not by her will execute the power of appointment given to her by the will of her husband. Subject to the allowance by the judge of probate in his discretion of costs as between solicitor and client the decree is affirmed.

*Ordered accordingly.*