E. MAURAN BEALS & another, trustees, *vs.* STATE STREET BANK AND TRUST COMPANY, executor, & others.

Norfolk.   November 5, 1974. — April 4, 1975.

Present: TAURO, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Conflict of Laws.   Power.   Devise and Legacy,* Power, Residuary clause.

Where a foreign domiciliary was a donee of a testamentary power of appointment over property in a testamentary trust under the will of a Massachusetts domiciliary, the substantive law of Massachusetts was to be applied in interpreting the will of the donee to determine whether the power of appointment was exercised.   [322-324]

In all the circumstances, where a donee of a general testamentary power of appointment, by a partial release prior to execution of her will, had reduced the power to a special power of appointment, and her will was silent as to the exercise of the power, it was held that the residuary clause of her will should be presumed to have exercised the power [325-326]; QUIRICO, J., joined by TAURO, C.J., concurring in the result on the ground that a general residuary clause in a will is equally competent to exercise a special power as it is to exercise a general power [327-330].

PETITION filed in the Probate Court for the county of Norfolk on March 12, 1970.

The case was reserved and reported by *Fox*, J., to the Appeals Court. The Supreme Judicial Court ordered direct review.

*Winslow A. Robbins* stated the case.

*Francis L. Coolidge* for George B. Blake, individually, & others.

*Michael B. Elefante* for State Street Bank and Trust Company, executor.

*Carroll G. Hunnewell*, pro se.

WILKINS, J. The trustees under the will of Arthur Hunnewell filed this petition for instructions, seeking a determination of the proper distribution to be made of a portion of the trust created under the residuary clause of his will. A judge of the Probate Court reserved decision and reported the case to the Appeals Court on the pleadings and a stipulation of facts. We transferred the case here.

Arthur Hunnewell died, a resident of Wellesley, in 1904, leaving his wife and four daughters. His will placed the residue of his property in a trust, the income of which was to be paid to his wife during her life. At the death of his wife the trust was to be divided in portions, one for each then surviving daughter and one for the then surviving issue of any deceased daughter. Mrs. Hunnewell died in 1930. One of the four daughters predeceased her mother, leaving no issue. The trust was divided, therefore, in three portions at the death of Mrs. Hunnewell. The will directed that the income of each portion held for a surviving daughter should be paid to her during her life and on her death the principal of such portion should "be paid and disposed of as she may direct and appoint by her last Will and Testament duly probated." In default of appointment, the will directed that a daughter's share should be distributed to "the persons who would be entitled to such estate under the laws then governing the distribution of intestate estates."

This petition concerns the distribution of the trust portion held for the testator's daughter Isabella H. Hunnewell, later Isabella H. Dexter (Isabella). Following the death of her mother, Isabella requested the trustees to exercise their discretionary power to make principal payments by transferring substantially all of her trust share "to the Dexter family office in Boston, there to be managed in the first instance by her husband, Mr. Gordon Dexter." This request was granted, and cash and securities were transferred to her account at the Dexter office. The Hunnewell trustees, however, retained in Isabella's share a relatively small cash balance, an undivided one-third interest in a mortgage and undivided one-third interests in various parcels of real estate in the Commonwealth, which Isabella did not want in kind and which the trustees could not sell at a reasonable price at the time. Thereafter, the trustees received payments on the mortgage and proceeds from occasional sales of portions of the real estate. From her one-third share of these receipts, the trustees made further distributions to her of $1,900 in 1937, $22,000 in 1952, and $5,000 in 1953.

In February, 1944, Isabella, who was then a resident of New York, executed and caused to be filed in the registry of probate for Norfolk County an instrument which partially released her general power of appointment under the will of her father. See G. L. c. 204, §§ 27-36, inserted by St. 1943, c. 152. Isabella released her power of appointment "to the extent that such power empowers me to appoint to any one other than one or more of the . . . descendants me surviving of Arthur Hunnewell."

On December 14, 1968, Isabella, who survived her husband, died without issue, still a resident of New York, leaving a will dated May 21, 1965. Her share in the trust under her father's will then consisted of an interest in a contract to sell real estate, cash, notes and a certificate of deposit, and was valued at approximately $88,000.

Isabella did not expressly exercise her power of appointment under her father's will. The residuary clause of her will provided in effect for the distribution of all "the rest, residue and remainder of my property" to the issue per stirpes of her sister Margaret Blake, who had predeceased Isabella.[1] The Blake issue would take one-half of Isabella's trust share, as takers in default of appointment, in all events. If, however, Isabella's will should be treated as effectively exercising her power of appointment under her father's will, the Blake issue would take the entire trust share, and the executors of the will of Isabella's sister Jane (who survived Isabella and has since died) would not receive that one-half of the trust share which would go to Jane in default of appointment.[2]

In support of their argument that Isabella's will did not exercise the power of appointment under her father's will, the executors of Jane's estate contend that (1) Massachusetts substantive law governs all questions relating to the power of appointment, including the interpretation of Isabella's will; (2) the power should be treated as a special power of appointment because of its partial release by Isabella; and (3) because Isabella's will neither

---

[1] The significant portion of the residuary clause reads as follows: "All the rest, residue and remainder of my property of whatever kind and wherever situated (including any property not effectively disposed of by the preceding provisions of this my will and all property over which I have or may have the power of appointment under or by virtue of the last will and testament dated November 27, 1933 and codicils thereto dated January 7, 1935 and January 8, 1935 of my husband, the late Gordon Dexter) . . . I devise, bequeath and appoint in equal shares to such of my said nephew *GEORGE BATY BLAKE* and my said nieces *MARGARET CABOT* and *JULIA O. BEALS* as shall survive me and the issue who shall survive me of any of my said nephew or nieces who may predecease me, such issue to take per stirpes."

[2] The parties agree that in these circumstances the intestate recipients, and the proportion due to each, are the same under the laws governing the distribution of intestate estates in Massachusetts and New York.

expresses nor implies any intention to exercise the power, the applicable rule of construction in this Commonwealth is that a general residuary clause does not exercise a special power of appointment. The Blake issue, in support of their argument that the power was exercised, contends that (1) Isabella's will manifests an intention to exercise the power and that no rule of construction need be applied; (2) the law of New York should govern the question whether Isabella's will exercised the power and, if it does, by statute New York has adopted a rule that a special power of appointment is exercised by a testamentary disposition of all of the donee's property; and (3) if Massachusetts law does apply, and the will is silent on the subject of the exercise of the power, the principles underlying our rule of construction that a residuary clause exercises a general power of appointment are applicable in these circumstances.

1. We turn first to a consideration of the question whether Isabella's will should be construed according to the law of this Commonwealth or the law of New York.[3] There are strong, logical reasons for turning to the law of the donee's domicil at the time of death to determine whether a donee's will has exercised a testamentary power of appointment over movables. See Restatement 2d: Conflict of Laws, § 275, comment c (1971); Scott, Trusts,

---

[3] The applicable rules of construction where a donee's intention is not clear from his will differ between the two States. In the absence of a requirement by the donor that the donee refer to the power in order to exercise it, New York provides by statute that a residuary clause in a will exercises not only a general power of appointment but also a special power of appointment, unless the will expressly or by necessary implication shows the contrary. 17B McKinney's Consol. Laws of N. Y. Anno. § 10-6.1 (1967). See *Matter of Hopkins,* 46 Misc. 2d (N. Y.) 273, 276 (1964). "'Necessary implication'" exists only where the will permits no other construction. *Matter of Deane,* 4 N. Y. 2d 326, 330 (1958). In Massachusetts, unless the donor has provided that the donee of the power can exercise it only by explicit reference to the power, a general residuary clause in a will exercises a general power of appointment unless there is a clear indication of a contrary intent. *Boston Safe Deposit & Trust Co.* v. *Painter,* 322

§ 642, p. 4065 (3d ed. 1967); Scoles, Goodrich's Conflict of Laws, §§ 175-177, p. 346 (4th ed. 1964). Most courts in this country which have considered the question, however, interpret the donee's will under the law governing the administration of the trust, which is usually the law of the donor's domicil. See, e.g., *Lane* v. *Lane,* 4 Pennewill 368, 378 (Del. 1903); *Bussing* v. *Hough,* 237 Iowa 194, 201 (1946); *Farnum* v. *Pennsylvania Co. for Ins. on Lives & Granting Annuities,* 87 N. J. Eq. 108, 111 (1916), affd. 87 N. J. Eq. 652 (1917); *Matter of Deane,* 4 N. Y. 2d 326, 331 (1958) (inter vivos trust); *Matter of Bauer,* 14 N. Y. 2d 272, 277 (1964) (inter vivos trust); *Barton Trust,* 348 Pa. 279, 282 (1944) (inter vivos trust); *Cotting* v. *DeSartiges,* 17 R. I. 668, 670-671 (1892). Contra, *Radford* v. *Fidelity & Columbia Trust Co.* 185 Ky. 453, 459 (1919) (inter vivos trust). This has long been the rule in Massachusetts. *Sewall* v. *Wilmer,* 132 Mass. 131, 136-137 (1882). *Tudor* v. *Vail,* 195 Mass. 18, 26 (1907) (inter vivos trust). *Russell* v. *Joys,* 227 Mass. 263, 267 (1917) (inter vivos trust). *Pitman* v. *Pitman,* 314 Mass. 465, 470 (1943). *Boston Safe Deposit & Trust Co.* v. *Painter,* 322 Mass. 362, 363 (1948). *New England Merchs. Natl. Bank* v. *Mahoney,* 356 Mass. 654, 656 (1970) (inter vivos trust). Indeed, the rule is so well established that parties have conceded the point from time to time. See *Boston Safe Deposit & Trust Co.* v. *Prindle,* 290 Mass. 577, 581 (1935); *Fiduciary Trust Co.* v. *First Natl. Bank,* 344 Mass. 1, 2 (1962) (inter vivos trust).[4]

If the question were before us now for the first time, we might well adopt a choice of law rule which would

---

Mass. 362, 366-367 (1948). *Second Bank-State St. Trust Co.* v. *Yale Univ. Alumni Fund,* 338 Mass. 520, 524 (1959). However, in *Fiduciary Trust Co.* v. *First Natl. Bank,* 344 Mass. 1, 6-10 (1962), we held that a general residuary clause did not exercise a special testamentary power of appointment in the circumstances of that case.

[4] Of course, the law of the donee's domicil would be applied if the donor expressed such an intention. See *Walker* v. *Treasurer & Recr.*

turn to the substantive law of the donee's domicil, for the purpose of determining whether the donee's will exercised a power of appointment. However, in a field where much depends on certainty and consistency as to the applicable rules of law, we think that we should adhere to our well established rule. Thus, in interpreting the will of a donee to determine whether a power of appointment was exercised, we apply the substantive law of the jurisdiction whose law governs the administration of the trust.

2. Considering the arguments of the parties, we conclude that there is no indication in Isabella's will of an intention to exercise or not to exercise the power of appointment given to her under her father's will. A detailed analysis of the various competing contentions would not add to our jurisprudence.[5] In the absence of an intention disclosed by her will, construed in light of circumstances known to her when she executed it, we must adopt some Massachusetts rule of construction to resolve the issue before us. The question is what rule of construction. We are unaware of any decided case which, in this context, has dealt with a testamentary general power, reduced to a special power by action of the donee.[6]

---

Gen. 221 Mass. 600, 603 (1915); Greenough v. Osgood, 235 Mass. 235, 237-238 (1920); Amerige v. Attorney Gen. 324 Mass. 648, 657-658 (1949).

[5] Isabella's residuary clause disposed of her "property." Because the trustees had agreed to distribute her trust portion to her and had largely done so and because, in a sense, she had exercised dominion over the trust assets by executing the partial release, a reasonable argument might be made that she regarded the assets in her portion of the trust as her "property." However, a conclusion that she intended by implication to include assets over which she had a special power of appointment within the word "property" is not justifiable because her residuary clause refers expressly to other property over which she had a special power of appointment under the will of her husband.

[6] Clearly Isabella had only a special power of appointment after she partially released the general power given to her under her father's

3. We conclude that the residuary clause of Isabella's will should be presumed to have exercised the power of appointment. We reach this result by a consideration of the reasons underlying the canons of construction applicable to general and special testamentary powers of appointment. Considered in this way, we believe that a presumption of exercise is more appropriate in the circumstances of this case than a presumption of non-exercise.

When this court first decided not to extend to a special power of appointment the rule of construction that a general residuary clause executes a general testamentary power (unless a contrary intent is shown by the will), we noted significant distinctions between a general power and a special power. *Fiduciary Trust Co.* v. *First Natl. Bank, supra,* at 6-10. A general power was said to be a close approximation to a property interest, a "virtually unlimited power of disposition" (9), while a special power of appointment lacked this quality (10). We observed that a layman having a general testamentary power over property might not be expected to distinguish between the appointive property and that which he owns outright, and thus "he can reasonably be presumed to regard this appointive property as his own" (9). On the other hand, the donee of a special power would not reasonably regard such appointive property as his own: "[h]e would more likely consider himself to be, as the donor of the power intended, merely the person chosen by the donor to decide who of the possible appointees should share in the property (if the power is exclusive), and the respective shares of the appointees" (10).

Considering the power of appointment given to Isabella and her treatment of that power during her life,

---

will. See *Jeffers Estate,* 394 Pa. 393, 398-399 (1959); *Mearkle Estate,* 23 D. & C. 2d (Pa.) 661, 665 (1960). And, of course, if she had totally released the power of appointment, her will could have had no effect on the devolution of "her" portion of the trust under her father's will.

the rationale for the canon of construction applicable to general powers of appointment should be applied in this case. This power was a general testamentary power at its inception. During her life, as a result of her request, Isabella had the use and enjoyment of the major portion of the property initially placed in her trust share. Prior use and enjoyment of the appointive property is a factor properly considered as weighing in favor of the exercise of a power of appointment by a will. *Fiduciary Trust Co.* v. *First Natl. Bank, supra,* at 10. Isabella voluntarily limited the power by selecting the possible appointees. In thus relinquishing the right to add the trust assets to her estate, she was treating the property as her own. Moreover, the gift under her residuary clause was consistent with the terms of the reduced power which she retained. In these circumstances, the partial release of a general power does not obviate the application of that rule of construction which presumes that a general residuary clause exercises a general power of appointment.

4. A decree shall be entered determining that Isabella H. Dexter did exercise the power of appointment partially released by an instrument dated February 25, 1944, given to her by art. Fourth of the will of Arthur Hunnewell and directing that the trustees under the will of Arthur Hunnewell pay over the portion of the trust held under art. Fourth of his will for the benefit of Isabella H. Dexter, as follows: one-third each to George Baty Blake and Julia O. Beals; and one-sixth each to Margaret B. Elwell and to the estate of George B. Cabot. The parties shall be allowed their costs and counsel fees in the discretion of the Probate Court.

*So ordered.*

QUIRICO, J. (with whom Tauro, C.J., joins) concurring in the result. I concur in the court's conclusion that the general residuary clause in the will of Isabella H. Dexter exercised the power of appointment given to her by art. Fourth of the will of Arthur Hunnewell. However, I would reach that result without regard to whether the power of appointment was, either when it was created or when it was exercised, a general power of appointment or a special power of appointment, and without perpetuating the distinction made between the two types of powers in our decision in *Fiduciary Trust Co.* v. *First Natl. Bank,* 344 Mass. 1, 6-10 (1962). I would hold that the "settled canon of construction that a general residuary clause will operate as an execution of a general testamentary power unless a contrary intent is shown by the will" (*Fiduciary Trust Co.* case, 5), quoting from *Second Bank-State St. Trust Co.* v. *Yale Univ. Alumni Fund,* 338 Mass. 520, 524 (1959), which has been a part of the case law of this Commonwealth at least since our decision in *Amory* v. *Meredith,* 7 Allen 397 (1863), applies equally to the execution of a special power of appointment, provided, of course, that (a) the residuary clause includes any beneficiary within the scope of the special power of appointment, (b) the instrument creating the special power does not prohibit its exercise by a general residuary clause, and (c) the residuary clause includes no disclaimer of intent to exercise the special power.

It is with reluctance that I advocate a departure from the holding in the *Fiduciary Trust Co.* case which was decided in 1962 by a quorum of distinguished Justices of this court, but I am persuaded to do so by the policy considerations discussed below. The *Fiduciary Trust Co.* case itself represented a departure from views expressed, by way of dicta, in several cases which preceded it. In *Stone* v. *Forbes,* 189 Mass. 163, 169 (1905), we said: "If it were necessary to determine the question we should hesitate to follow the . . . [distinction drawn in the

English cases between the exercise of general and special powers by a residuary clause]. There is certainly less reason for doing so since *Amory* v. *Meredith* than before. There would seem to be no good reason why the question whether a special power of appointment had been exercised should not be determined by the same rules that are applied in other cases to the construction or interpretation of wills." In several other cases the opportunity to rule that a general residuary clause does not ordinarily exercise a special power of appointment was also declined. *Worcester Bank & Trust Co.* v. *Sibley*, 287 Mass. 594, 598 (1934). *Pitman* v. *Pitman*, 314 Mass. 465, 475 (1943). *Frye* v. *Loring*, 330 Mass. 389, 394-395 (1953). In the last cited case we referred to Am. Law of Property, § 23.40 (a) (1952). That source provides: "The reasoning supporting the Massachusetts presumption that a residuary clause was intended to exercise powers of appointment applies with equal force whether the power in question is general or special."

The basic judicial objective in this and similar cases is to ascertain the testamentary intent of the donee of the power. I am unable to accept the proposition that a testator who subscribes to a will which includes a residuary clause in substantially the common form, broadly covering "all the rest, residue and remainder of my property" does not thereby express quite clearly an intention to dispose of all of the property and estate which can be the subject of testamentary disposition by him. Neither am I able to accept the proposition that such language, reasonably construed, permits any inference that the testator intended, by the use of such broad language, to exercise a general power of appointment but not a special one.

In its decision in the *Amory* case, *supra*, from which there evolved the "settled canon of construction that a general residuary clause will operate as an execution of a general testamentary power unless a contrary intent is shown by the will," this court first reviewed the develop-

ment of the law of England on this subject. It cited several English cases which had held that a will would not operate to execute a power of appointment unless it referred expressly to the power or to the subject of the power, and that "a mere residuary clause gave no sufficient indication of intention to execute a power" (399). This court then noted criticism of the English rule, particularly because of its emphasis on the distinction between "power" and "property," stating that "the refinements and subtleties to which this distinction leads are great and perplexing" (398). It then noted that the rule was changed by a statute (St. 7 Will. IV and 1 Vict. c. 26, § 27), declaring "that a general devise of real or personal estate, in wills thereafter made, should operate as an execution of a power of the testator over the same, unless a contrary intention should appear on the will"; and then quoted the comment of Judge Story (1 Story R. 458, note), to the effect that as a result of the statute, " [t]he doctrine, therefore, has at least settled down in that country [England] to what would seem to be the dictate of common sense, unaffected by technical niceties" (400). For further discussions and citations of cases on the development of the law on this subject in England and in this country, see Restatement: Property, § 343 (1), comment d (1940); Am. Law of Property, § 23.40 (1952); 104 Trusts and Estates 814 (1965); 51 Cornell L. Q. 1, 9-10 (1965); 16 A. L. R. 3d 911, 920-924 (1967); 62 Am. Jur. 2d, Powers, §§ 51-52 (1972).

It is apparent that in the case of *Fiduciary Trust Co.* v. *First Natl. Bank,* 344 Mass. 1 (1962), the court distinguished general powers and special powers in part on the basis of the distinction between powers and property.[1] The latter is the same distinction of which

[1] The court said, at 9: "We think that, unlike a general power, a special power is not 'a close approximation to a property interest . . ... It is our opinion that the traditional common law distinction between 'property' and 'powers' . . . which with regard to general powers has in effect been overridden in cases cited above, persists with un-

this court said in the *Amory* case, *supra*: "[T]he refinements and subtleties to which this distinction leads are great and perplexing" (398). Indeed, the case now before us represents one of the perplexities resulting from a rule based on such a distinction. These unnecessary "refinements and subtleties" inevitably breed litigation initiated either by competing claimants or by a fiduciary, often a professional fiduciary, seeking to avoid or minimize the risk of liability to himself by obtaining the protection of a judicial declaration, usually at considerable expense to the intended beneficiaries. We should, if possible, develop and apply rules of law which will eliminate the occasion for such litigation. One step in that direction would be to hold that a general residuary clause in a will is equally competent to execute a special power of appointment as it is to exercise a general power. See *Bostwick* v. *Hurstel*, 364 Mass. 282, 292 (1973).

diminished validity in the case of special powers and would alone serve as a sufficiently sound rationale for the nonapplicability of the canon in question to special powers."