JOHN E. McKELVY, JR. & another,[1] trustees, *vs.* FREDERICK A. TERRY, JR. & another,[2] executors and trustees.

Norfolk.    April 8, 1976. — May 14, 1976.

Present: REARDON, QUIRICO, KAPLAN, & WILKINS, JJ.

*Power. Devise and Legacy,* Power, Residuary clause.

Where an instrument provided that a testamentary power of appointment was to be exercised by "reference" to the power, a residuary clause of the donee's will embracing by its terms any property as to which the donee had a power of appointment under any instrument was sufficient effectively to exercise the power. [331-333]

Where an instrument provided that a testamentary power of appointment was to be exercised by "reference" to the power, the testimony of an attorney who drafted the donee's will, which included a residuary clause embracing by its terms any property as to which the donee had a power of appointment under any instrument, was admissible for the purpose of removing ambiguity in the language of the will. [334-335]

BILL IN EQUITY filed in the Probate Court for the county of Norfolk on January 22, 1974.

The suit was heard by *Podolski, J.*

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Ronald F. Kehoe* for John E. McKelvy, Jr., & another, trustees.

---

[1] Union National Bank of Pittsburgh.

[2] Manufacturers Hanover Trust Company.

*Nicholas A. Grace* for Frederick A. Terry, Jr., & another, executors and trustees.

*Francis S. Moulton, Jr., & William H. Thedinga,* as amici curiae, submitted a brief.

KAPLAN, J. This is another in a series of cases testing on varying facts whether donees of powers of appointment have meant to exercise their powers or have succeeded in doing so. In the present case, an inter vivos instrument created a special or limited power of appointment that might be exercised by the donee by will referring to the power. A judge of the Probate Court held, in the particular circumstances, that the power was effectively exercised by a residuary clause of the donee's will embracing by its terms any property as to which the donee had a power of appointment under any instrument. We find no reason to disagree with the judge's analysis or conclusion and affirm his judgment.

John E. McKelvy, a resident of the Commonwealth, on March 14, 1963, executed an instrument which provided for separate trust shares after his death for his children, who were his sons John E. McKelvy, Jr., and Douglas S. McKelvy. By art. V (A) (2), each child was given a testamentary power of appointment over his trust share, as follows:

"Each child of the donor shall have a limited power of appointment over whatever part or all of his said share shall remain at the time of the death of donor and the child involved, whichever is later; provided, however, that said limited power of appointment may be exercised by the child only by his will, duly proved and allowed, whenever executed, by reference to the limited power of appointment herein given to him; and provided that the child may not exercise this limited power of appointment in favor of his creditors, his estate or the creditors of his estate; subject to the foregoing limitation, said power of appointment may be exercised to provide outright gifts or gifts in trust, or both."

In default of the exercise of the power of appointment,

the child's share was to continue to be held in trust for his issue.[3]

The sons John Jr. and Douglas survived their father, who died on August 6, 1963, and they enjoyed their trust shares. Together with Union National Bank of Pittsburgh they served as trustees of the father's trust.

Douglas, a resident of New York, on May 3, 1972, in circumstances to be later mentioned, executed a will. He died on March 14, 1973. The will, after particular bequests, made the following disposition by its fifth article:

"All of the residue of my estate, including lapsed legacies and devises (and also including any property over which I may have a power of appointment under any instrument, it being my intention to exercise all such powers which I may have at my death, except to the extent provided in Article FIRST hereof[4]), I devise and bequeath to my issue me surviving, in equal shares, *per stirpes*, or in default thereof, to the issue me surviving of my brother, John McKelvy, in equal shares, *per stirpes;* provided, however, that any share as thus determined in respect of a child of mine or of my brother who shall not have reached the age of twenty-five years at my death shall, in lieu of payment to such child, be paid over and distributed to my Trustees, to be held by them upon a separate trust, to manage, invest and reinvest the same and to collect the income thereof, and to pay or apply so much of the net income as they may from time to time deem necessary or desirable to or for the support, maintenance and education of the child in respect of whom such share shall have been so determined, and to accumulate and add to the principal of the trust for such child's benefit any balance of said net income not so paid

---

[3] Final distribution clear of the trust could take place as late as twenty years after the death of the last survivor of the donor and his issue living at his death.

[4] The first article directs payment of debts from the estate; it also directs payment of taxes, and that they be paid as administration expenses out of the residuary estate, except any tax imposed with respect to any property over which the testator might have a power of appointment, which tax is to be equitably prorated to and paid from any property subject to such power.

or applied, until such child shall have reached the age of twenty-five years or sooner died. My Trustees are also authorized to pay to or apply for the benefit of such child such amounts from the principal of the trust for his or her benefit (including the whole thereof) as my Trustees shall deem advisable for any reason or purpose whatsoever, irrespective of any other resources of such child, and the determination of my Trustees in this respect shall be final and binding upon all persons then or thereafter interested in such trust. When and if such child shall reach the age of twenty-five years, my Trustees shall pay over to him or her absolutely the principal of the trust held for his or her benefit, as then constituted. . . ."

The stone of stumbling is the interpretation of the language at the beginning of the article enclosed in parentheses. The remaining trustees of the father's trust, as plaintiffs in the present action, seek a declaration that this language failed to exercise Douglas's power of appointment, and hence his trust share is to be held by them for his issue (a son, Douglas S., Jr., and a daughter, Karen Shepard, aged eleven and six at the time of the execution of the will). The defendants are Frederick A. Terry, Jr. (a friend of Douglas who served as his attorney in drafting the will) and Manufacturers Hanover Trust Company, executors and trustees of Douglas's will. They contend that the language was effective to exercise the power, so that Douglas's trust share should pass to them to be held in the trust created by the fifth article.[5]

1. The question, it is agreed, is to be decided according to the law of the Commonwealth,[6] but, as may be expected, there is no decision that construes just the same language. If the power of appointment were a general one, we would

[5] An amicus brief filed on behalf of the minor children of Douglas sides with the defendants.

[6] The McKelvy trust instrument provided (art. XII): "All questions concerning the meaning and intention of the terms of this instrument and concerning the validity hereof, and all questions relating to performance hereunder, shall be judged and resolved in accordance with the laws of said Commonwealth." And see Beals v. State St. Bank & Trust Co., 367 Mass. 318, 322-324 (1975).

McKelvy *v.* Terry.

be assisted by the presumption stemming from *Amory* v.
*Meredith,* 7 Allen 397 (1863), that a residuary clause
exercises a general power of appointment unless the con-
trary affirmatively appears. See *Beals* v. *State St. Bank &*
*Trust Co.,* 367 Mass. 318, 322 n.3 (1975); *Boston Safe*
*Deposit & Trust Co.* v. *Painter,* 322 Mass. 362, 365-367
(1948). But the power here created by the father as donor
must be classified as a special or limited one (the trust
instrument styles it "limited"), although in substance it is
broad and approaches a general power. Under *Fiduciary*
*Trust Co.* v. *First Nat'l Bank,* 344 Mass. 1 (1962), the
presumption of the *Amory* line of cases does not apply to
residuary clauses in their relation to special powers of ap-
pointment, and we are left to interpretation without that
aid.[7]

There is no need in the present case to reconsider the
soundness of the *Fiduciary Trust* decision, and therefore
we do not enter upon the concurring opinion of Justice
Quirico in *Beals* v. *State St. Bank & Trust Co., supra* at
327, where, joined by Chief Justice Tauro, he deplored the
failure to apply the *Amory* presumption with an even hand
to special powers. It seems to us that — confining our at-
tention for the moment to the texts of the donor's instru-
ment and the donee's will and ignoring the attendant
circumstances — the power has been exercised effectively;
that is, the meaning or design of the relevant clause of the
will sufficiently matches any requirement of the trust in-
strument. That instrument calls for a "reference" to the
power, not a specific reference, and we think, agreeing with
the judge below, that the residuary clause of the will is an
adequate reference although it is inclusive of any power
created by any instrument in the donee's favor. This in-
terpretation is helped by the circumstances, from time to
time relied on in our cases as indicating a purpose to exer-
cise powers of appointment, that the donee here had an
antecedent beneficial interest in the property over which

---

[7] In the *Fiduciary Trust* case a special power was held not exercised
by a residuary clause making no mention of powers of appointment.

he held the power (see *Beals* v. *State St. Bank & Trust Co., supra* at 325-326; *Boston Safe Deposit & Trust Co.* v. *Painter, supra* at 365-366; cf. *Fiduciary Trust Co.* v. *First Nat'l Bank, supra* at 10), and by the further circumstance that the will takes the precaution, in the fifth article, of measuring the period of perpetuities with respect to the trusts created by the will from the date of his father's death. See the remarks on perpetuities in *Fiduciary Trust Co.* v. *First Nat'l Bank, supra* at 8.

As indicated, there is no case squarely in point, but *Shine v. Monahan,* 354 Mass. 680 (1968), is instructive. Although the donor of an inter vivos trust required that a general power of appointment be exercised " 'by specific reference in her [donee's] will to the full power hereby created,' " we held that a reference in the donee's will to " '... all property of which I have the power of appointment by virtue [of] any will or testament or inter vivos trust executed by my husband ...' " (the donor in question) was adequate to exercise the power. At 681.[8] We thought that there need not be exact compliance with the formality indicated by the donor where the approximation would satisfy his basic purpose. Less indulgence may be needed in the present case because the donor did not in terms require a specific reference.[9]

---

[8] The court in the *Shine* case distinguished *National Shawmut Bank* v. *Joy,* 315 Mass. 457 (1944), in which particularized formal requirements (a seal, acknowledgment, and deposit with trustee) were laid down by the donor for exercise of a general power of appointment, and the donee failed to comply. The court also distinguished a situation in which a donor required a specific reference and the donee simply referred to any power of appointment he might have.

[9] Also instructive is *Pitman* v. *Pitman,* 314 Mass. 465 (1943), where a special power of appointment was held exercised by a residuary clause in the donee's will devising and bequeathing his own property and that over which he might have a power of appointment at the time of his death. In the *Beals* case, *supra,* a general power that had been reduced to a special power by voluntary release by the donee was held exercised by a residuary clause in the donee's will mentioning only another and different power of appointment under the will of the donee's husband; the court concluded that in the circumstances the reasons underlying the *Amory* presumption should be applied. See also *Frye* v. *Loring,* 330 Mass. 389, 394-395 (1953).

2. If interpretation of the bare texts leaves any doubt whether the will exercised the power, the doubt is overcome, we think, when one considers the setting in which the will was written — the circumstances existing and known to Douglas, and his attitude or desires regarding them, all bearing on the meaning to be ascribed to the critical clause. The testimony of Mr. Terry, the New York attorney who conferred with Douglas at the time and supervised the drafting of the will, was admissible for the purpose of removing ambiguity and illuminating meaning or intention. See *Putnam* v. *Putnam*, 366 Mass. 261, 266-267 (1974); *Boston Safe Deposit & Trust Co.* v. *Prindle*, 290 Mass. 577, 581-582 (1935). We pay due respect to the findings by the judge, based in part on the testimony.

In late April, 1972, Douglas had entered into a separation agreement with his second wife, and he was anxious to rewrite his will in that light since he was on the point of flying to the Dominican Republic to secure a divorce. On May 1 Douglas met with Mr. Terry for an hour. According to the judge's findings, supported by the testimony made part of the record, Douglas told Mr. Terry that he was worth about $5,000,000, half in a custodial account, and half in his father's trust. He stated that he had a power of appointment over his share of the trust which he could exercise in favor of his children, and that he wanted to appoint his share to them so that they would obtain outright ownership at age twenty-five: this was in reaction to his own disappointment in not having secured such ownership of his share under the trust. There was discussion of who should serve as executors and trustees under his will, and Douglas indicated, first, that there was no member of his family whom he wanted to name, and, second, that he was satisfied with the handling of his custodial account by Manufacturers Hanover; the discussion resulted in the understanding that Mr. Terry would be designated to serve with Manufacturers Hanover. The will as drafted and as executed on May 3 reflected Douglas's knowledge and purposes as communicated to Mr. Terry (as to the children's acquiring ownership by age twenty-five, see the last sen-

tence quoted above from the fifth article). The judge found as a fact that Douglas "intended by his will to exercise his power of appointment over his share of the Trust"; and on the whole case, including the breadth of the power granted to Douglas, the reference to the power in his will, his knowledge when he executed the will, and his expressed intention regarding the power, the judge concluded as matter of law that there was a valid exercise of the power. The plaintiffs stress the fact that Mr. Terry had not read the father's trust instrument when he drafted the will (Douglas did not have a copy at hand), and they point to other evidences of lack of deliberateness or circumspection in the entire transaction. But if the transaction was rather hurried, its sense is nevertheless reasonably clear. And if the donor of the power of appointment was seeking to ensure that the donee would advert to the power when the time came and make a choice, not by chance but after some thought (see the *Shine* case, *supra* at 682; cf. 5 American Law of Property § 23.44 [1952]), we think his purpose was measurably achieved.

*Judgment affirmed.*